(No. 76616.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. HECTOR REUBEN SANCHEZ, Appellant.

*Opinion filed January 18, 1996.—Rehearing denied April 1, 1996.*

HARRISON, J., took no part.

Jed Stone and Debra A. Harvey, both of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield (Barbara A. Preiner, Solicitor General, and Arleen C. Anderson and Michael A. Hurst, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

The defendant, Hector Reuben Sanchez, brings this appeal from an order of the circuit court of Lake County

dismissing, without an evidentiary hearing, his petition for post-conviction relief. Because the defendant was sentenced to death for the underlying murder conviction, the present appeal lies directly to this court. 134 Ill. 2d R. 651(a).

Following a jury trial in the circuit court of Lake County, the defendant was convicted of murder, attempted murder, aggravated kidnapping, rape, and deviate sexual assault and was sentenced to death for the murder conviction. This court affirmed the defendant's convictions and sentences on direct appeal (*People v. Sanchez* (1986), 115 Ill. 2d 238), and the United States Supreme Court denied the defendant's ensuing petition for *certiorari* (*Sanchez v. Illinois* (1987), 483 U.S. 1010, 97 L. Ed. 2d 745, 107 S. Ct. 3240). The defendant then instituted the present post-conviction proceeding. The circuit judge dismissed the defendant's petition without an evidentiary hearing, and this appeal followed.

The defendant's convictions stem from his role in the abduction, assault, and murder of Michelle Thompson and the attempted murder of Thompson's male companion, Rene Valentine. At the defendant's trial, Valentine identified the defendant as one of two men who forced their way into the car in which Valentine and Thompson were sitting outside a nightclub in Gurnee around 12:30 a.m. on February 4, 1983. After the intruders pulled the couple from their car, the defendant shot Valentine, and the defendant and the second man then drove off with Thompson.

Further evidence against the defendant was provided by his codefendant, Warren Peters, who testified on behalf of the prosecution at the defendant's trial. Peters stated that he and the defendant took Thompson to the defendant's home in Zion, where the defendant sexually assaulted the victim. A neighbor, Gene Gonyo, testified that he heard pounding on his back door around 1:30

a.m. on February 4 and saw a man and woman outside his house. Although the weather was wintry and there was snow on the ground, the woman was naked below the waist. Shortly after that, Gonyo saw the man and woman walk toward the defendant's house. The defendant soon appeared at Gonyo's door alone and apologized for the earlier disturbance. Warren Peters testified that the defendant later strangled the victim with a nylon strap, wrapped a coat hanger around her neck, and slammed her head against the basement floor. After the defendant burned the victim's clothing and jewelry in his fireplace, Peters and the defendant transported the body to Wisconsin and left it along a road.

The jury found the defendant guilty of murder, attempted murder, aggravated kidnapping, rape, and deviate sexual assault. The defendant waived his right to a jury for the first stage of the capital sentencing hearing, and the trial judge found the defendant eligible for the death penalty under the murder-in-course-of-felony aggravating circumstance. The defendant elected to have a jury for the second stage of the sentencing hearing. In aggravation, the State presented evidence of the defendant's murder of Sharon Egerer in Milwaukee in May 1975. According to this testimony, the defendant killed Egerer because she had filed a paternity action against him. In mitigation, the defense presented testimony from family members, who described the defendant's personal history and acts of kindness. Testifying in his own behalf at the sentencing hearing, the defendant denied committing either the Thompson murder or the Egerer murder.

On direct appeal, this court affirmed the defendant's convictions and sentences. (*People v. Sanchez* (1986), 115 Ill. 2d 238.) Consolidated with the case was the appeal from a separate proceeding the defendant had initiated pursuant to section 2—1401 of the Code of Civil Proce-

dure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401), and at that time we remanded for an evidentiary hearing on one of the contentions raised in the section 2—1401 petition. We later affirmed the trial court's denial of the claim. *People v. Sanchez* (1989), 131 Ill. 2d 417.

The defendant instituted the present matter in 1990 by filing a *pro se* petition for post-conviction relief in the circuit court of Lake County. Counsel was appointed to assist the defendant in the preparation and presentation of his claims, and counsel subsequently filed an amended petition, raising numerous allegations of constitutional error in the proceedings that resulted in the defendant's conviction and death sentence. The State moved to dismiss the defendant's amended post-conviction petition. Following argument by the parties, the judge took the matter under advisement and later dismissed the petition. Before this court the defendant raises more than 25 separate allegations of error, which may be divided among three principal groups: those concerning the defendant's fitness following a suicide attempt, those alleging ineffective assistance of counsel, and those challenging the post-conviction court's denial of certain defense motions.

A proceeding under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1991, ch. 38, pars. 122—1 through 122—7) represents a collateral challenge to the underlying conviction, not an appeal from the conviction. (*People v. Free* (1988), 122 Ill. 2d 367, 377.) To gain post-conviction relief, a defendant must establish a deprivation of Federal or State constitutional rights. (*People v. Thompkins* (1994), 161 Ill. 2d 148, 157.) Considerations of *res judicata* and waiver limit the scope of post-conviction review "to constitutional matters which have not been, and could not have been, previously adjudicated." (*People v. Winsett* (1992), 153 Ill. 2d 335, 346.) With these principles in mind, we now turn to the defendant's post-conviction claims.

## I. Fitness Hearing

The first group of issues raised by the defendant in the present appeal concerns his suicide attempt just prior to the start of the sentencing hearing and the trial court's failure to conduct a fitness hearing at that time. The defendant attempted to commit suicide the morning that the sentencing hearing was scheduled to begin. Following the defendant's treatment and release from the hospital, the sentencing hearing commenced later that day. The defendant now argues that he was not fit to proceed with the penalty hearing and that the trial court erred in failing to conduct a fitness hearing on its own motion.

Facts and circumstances of the defendant's suicide attempt were noted of record on the morning of the scheduled sentencing hearing. The trial judge stated that upon arriving at court he learned that jailers had discovered around 8:30 that morning that the defendant had attempted to commit suicide. The judge said that he had been told that the defendant had broken the lenses in his eyeglasses and had used the broken pieces of glass to cut his arm. The judge also said that the defendant had been released from a local hospital after treatment there for his injuries. The court noted that the defendant was then in a witness room in the courthouse and that defense counsel had had an opportunity to speak with him.

Defense counsel added that the defendant was distraught and had instructed the attorneys to send home the mitigation witnesses whom the defense had planned to call. Counsel also related that the defendant had said that he attempted to take his own life because he thought society was going to do so. Defense counsel requested that the jury be discharged and the hearing postponed until the defendant had "gotten a hold of himself" and was able to cooperate more fully with counsel. Asked by the judge whether the defendant was

unable to communicate with his attorneys, counsel replied that the defendant seemed different from when he had spoken to him the preceding night. As evidence of the defendant's inability to communicate and cooperate, counsel said that the defendant had ordered the attorney to do the opposite of what counsel had intended to do. Following this colloquy, the trial judge concluded that there was no *bona fide* doubt of the defendant's fitness for sentencing and denied the defense motion for postponement of the penalty hearing.

With the post-conviction petition the defendant presented additional evidence documenting the circumstances of his suicide attempt. Medical records submitted by post-conviction counsel showed that the defendant inflicted eight separate wounds on his arms, and these injuries are depicted in photographs that accompany the petition. Other photographs show the condition of the defendant's cell after he was removed from it. The post-conviction petition also includes written reports made by personnel of the county jail. According to one report, during the suicide attempt the defendant located an artery in his left arm and told an inmate, "I can pull it out but I can't cut it." The defendant also consumed sleeping pills that he had hidden from the guards. It took the efforts of several jailers to subdue the defendant following the discovery of the suicide attempt.

A defendant will be considered unfit for trial or sentencing if he is unable to understand the nature and purpose of the proceedings or to assist in his defense. (Ill. Rev. Stat. 1983, ch. 38, par. 104—10; *Dusky v. United States* (1960), 362 U.S. 402, 402, 4 L. Ed. 2d 824, 825, 80 S. Ct. 788, 788-89; *People v. Eddmonds* (1991), 143 Ill. 2d 501, 512.) The law presumes that a defendant is fit. (Ill. Rev. Stat. 1983, ch. 38, par. 104—10; *People v. Brandon* (1994), 162 Ill. 2d 450, 456.) Once a *bona fide* doubt of the defendant's fitness exists, however, the trial court is

obligated to conduct a hearing to determine the defendant's competency. Ill. Rev. Stat. 1983, ch. 38, par. 104—11(a).

The defendant initially argues that the facts and circumstances known to the trial court at the time of the sentencing hearing were sufficient to compel the judge to hold a fitness hearing on his own motion. We do not reach the merits of this issue, however, for we find that the same question could have been, and was, raised by the defendant in his direct appeal to this court. In the earlier case, the defendant argued that a new jury should have been impaneled for the sentencing hearing because he was then unfit to proceed as a result of the injuries he had sustained in the suicide attempt. This court noted that the defendant had failed to include the issue in his post-trial motion, and the court thus concluded that the defendant had waived the question. The court additionally found that "the trial judge's decision to proceed with the original jury was not so prejudicial as to amount to plain error." *Sanchez*, 115 Ill. 2d at 271.

The defendant further argues that the new evidence submitted with the post-conviction petition, coupled with the facts known to the judge at the time of the sentencing hearing, were sufficient to raise a *bona fide* doubt of his fitness. The defendant contends that neither the trial judge nor the defense attorneys were then aware of the full import of his injuries from the suicide attempt.

We do not agree with the defendant that the newly discovered evidence, in combination with the circumstances present at the time of the sentencing hearing, compelled the judge to hold a fitness hearing. As the State observes, a history of suicide attempts does not by itself demonstrate that a defendant is unfit. (See *People v. George* (1993), 263 Ill. App. 3d 968, 980; *People v. Lopez*

(1991), 216 Ill. App. 3d 83, 86-87; *People v. Stevens* (1989), 188 Ill. App. 3d 865, 890.) Although the trial judge might not have known the full extent of the defendant's injuries, the judge was aware of the nature of those injuries and of the defendant's release from the hospital following his treatment there. The judge also knew that defense counsel had met with the defendant that morning and heard counsel's own assessment of the defendant. The new evidence documenting the defendant's suicide attempt does not show that the defendant's capacity to understand the proceedings or to assist in his own defense was diminished or impaired at the time of the sentencing hearing.

The only evidence cited by the defendant that would indicate an inability on his part to cooperate with counsel or to understand the nature of the proceedings occurred when he waived his right to a jury for the first stage of the bifurcated sentencing hearing. The defendant argues that the comments he made on that occasion, together with the documentary evidence of his injuries, further demonstrate his unfitness for sentencing. We have examined the defendant's comments at the time of the jury waiver, however, and find that they do not assist the defendant.

The defendant's jury waiver was taken around noon on the day of the suicide attempt. The defendant notes that at one point during the admonitions he told the judge, "No, I lost you far back, I didn't understand what you're saying," and that at the end of the admonitions he requested a drink of water and said that he thought he was going to faint. The defendant contends that these comments demonstrate his inability to understand the nature of the proceedings and to assist in his own defense.

The defendant's comment that he did not understand what the judge was saying came in response to the

judge's efforts to explain the requirements of the murder-in-course-of-felony provision of section 9—1(b)(6), the aggravating circumstance relied on here, and its application when the victim has sustained injuries inflicted by more than one offender. Following the defendant's comment that he did not understand what the judge was saying, defense counsel declared that accountability was not part of this case and questioned the relevance of the admonition. The defendant's request for water and statement that he feared he was going to faint occurred at the end of the lengthy admonitions. Following those remarks, the defendant was provided with water and was permitted to sit down. There was no further discussion concerning the defendant's physical capacity to continue with the proceeding.

We do not believe that the comments cited by the defendant raise a *bona fide* doubt of his fitness. The full text of the admonitions demonstrates that the defendant's waiver was knowing and intelligent and fails to support the defendant's contention that his responses to the court's inquiries raise a *bona fide* doubt of his fitness. The defendant's statements were coherent and do not suggest that he failed to understand the admonitions or the purpose or nature of the proceedings. On this record, and considering the new evidence presented by the defendant in support of his claim, we do not believe that the trial judge erred in failing to conduct a fitness hearing.

The defendant next argues that law enforcement officers violated the requirements of *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, by misleading defense counsel about the gravity of the defendant's suicide attempt and by withholding evidence documenting the nature and extent of the defendant's injuries. According to *Brady*, a due process violation may be found in the prosecution's suppression of evi-

dence that is favorable to an accused and that is material to his guilt or punishment.

The parties agree that the standard for materiality under *Brady* is whether there is a reasonable probability that disclosure of the evidence to the defense would have altered the outcome of the proceeding. (*United States v. Bagley* (1985), 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494, 105 S. Ct. 3375, 3383.) We do not believe that the evidence allegedly withheld by the prosecution was material in either aspect suggested by the defendant. First, we have already found that the new evidence would not have warranted the trial judge in conducting a fitness hearing. Accordingly, we must conclude that the information was not material under *Brady* to the question of the defendant's fitness.

As further proof that the allegedly suppressed evidence was both favorable to the defense and material to sentencing, the defendant argues that the jurors might not have voted to impose the death penalty at the conclusion of the sentencing hearing if they had known then about the suicide attempt. We do not agree. Contrary to the defendant's view, we do not believe that a jury considering evidence of this nature would necessarily view it as mitigating; a jury could as well believe that a suicide attempt was indicative of guilt.

II. Ineffective Assistance of Counsel

The defendant next raises a series of challenges to the effectiveness of his counsel during trial and sentencing, in the post-trial proceedings, and on appeal. We note that the defendant's trial attorneys also represented him on appeal, so the usual rule barring consideration of ineffective assistance claims that could have been raised on direct review is not applicable here. See *People v. Ruiz* (1989), 132 Ill. 2d 1, 9; *People v. Gaines* (1984), 105 Ill. 2d 79, 91.

The right to the assistance of counsel encompasses

the right to the effective assistance of counsel. (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 344, 64 L. Ed. 2d 333, 343-44, 100 S. Ct. 1708, 1716.) In *Strickland v. Washington* (1986), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, the Supreme Court formulated a two-part test for resolving claims of ineffective assistance of counsel. To prevail on a claim of ineffective assistance, a defendant must generally establish both that counsel's performance was deficient and that the deficiency was prejudicial. (*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) Judicial scrutiny of counsel's performance is highly deferential, and a court considering an ineffectiveness claim "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.

Even if counsel's performance is objectively unreasonable, relief is not automatically warranted, for a defendant must still establish prejudice. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." (*Strickland*, 466 U.S. at 691, 80 L. Ed. 2d at 696, 104 S. Ct. at 2066.) To establish prejudice resulting from an asserted deficiency in counsel's performance, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) Because a defendant must establish both a deficiency in counsel's performance and prejudice resulting from the alleged deficiency, failure to establish either proposition will be fatal to the claim. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; *People v. Harris* (1994), 164 Ill. 2d 322, 349.

The defendant first alleges that trial counsel was ineffective in failing to investigate the full extent of the defendant's suicide attempt. The defendant maintains thàt, if counsel had conducted a more thorough investigation, counsel would have been able to raise a *bona fide* doubt of the defendant's fitness, which would then have necessitated a fitness hearing. In support of this claim the defendant cites the statement in trial attorney George B. Collins' affidavit that at the time of the hearing Collins believed that the defendant "was apparently faking some scratches to avoid a very unpleasant hearing." Collins stated further that he "was not aware of the extent to which [the defendant] had lost blood, or had injured himself."

We note that counsel met with the defendant prior to the start of the sentencing hearing and presumably discussed the suicide attempt with his client at that time. We do not believe that the defendant can now establish that counsel was ineffective for having failed to conduct a more thorough examination of the circumstances of the defendant's suicide attempt. We have already determined that the documentary evidence submitted with the post-conviction petition would not have led the trial judge to conduct a fitness hearing or have otherwise affected the sentencing hearing. Finding no prejudice to the defendant from the failure to present this evidence to the court and the jury, we must therefore reject the allied argument that counsel rendered ineffective assistance by failing to conduct an investigation that would have brought this information to light.

The defendant next argues that trial counsel was ineffective for failing to investigate and present certain mitigating evidence at the second stage of the capital sentencing hearing. The defendant specifically argues that counsel should have presented to the jury psycho-

logical evidence and evidence of the defendant's "life story."

In support of these allegations the defendant submitted affidavits of family members, who described the defendant's difficult childhood and home environment. In separate affidavits a psychiatrist, Dr. Henry Conroe, and a psychologist, Dr. Alan Rosenwald, expressed the view that the defendant might have been suffering from organic brain damage at the time of the offenses. The two experts based those opinions on their review of certain information and transcripts, though they stated further that they would need to meet with and test the defendant if they were to make a diagnosis. In addition, the defendant submitted affidavits of trial counsel, who stated that the defense attorneys had concentrated on the guilt-innocence portion of the proceedings and were not adequately prepared for the death penalty hearing.

In mitigation at the sentencing hearing, the defendant presented testimony describing his harsh upbringing and the cruel treatment he received from his father. This evidence showed that the defendant's father was physically abusive toward the defendant and had killed the defendant's pets. On one occasion, the father killed and cooked a pet pigeon and served it to the family for the evening meal. Another time, the father discovered a rabbit that the defendant was keeping as a pet and beat the defendant over the head with it, killing the animal. Despite being unable to read and write, the defendant had worked for the same employer for about 15 years before being laid off, and he had saved money and bought a home.

In closing argument at the second stage of the sentencing hearing, defense counsel contended that the defendant was not guilty of the charged offenses and that imposition of the death penalty would therefore be wrong. Counsel also referred to the defendant's difficult

childhood and to the positive aspects of the defendant's adult life, questioning the likelihood that the defendant would have committed these crimes. In addition, counsel noted that the defendant helped his family members, and that he had continued to do so even while he was in jail awaiting trial.

Counsel's own admission of ineffectiveness is not binding on us or determinative of the issues raised here. (See *People v. Williams* (1991), 215 Ill. App. 3d 800, 810.) As *Strickland* instructs, counsel's performance must be assessed against an objective standard of reasonableness. (*Strickland*, 466 U.S. at 687-88, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) Applying that standard to the facts in this case, we do not believe that counsel's performance at the second stage of the sentencing hearing was deficient.

The defendant's argument that defense counsel failed to introduce mitigating evidence of the defendant's background overlooks the testimony presented on the defendant's behalf at the second stage of the penalty hearing. As stated in one of the dissenting opinions in the defendant's direct appeal, "Significant evidence in mitigation was presented, including evidence that the defendant had been abused as a child, that he had held a job for some 14 years, and that he had saved enough to build a house. The defendant had no criminal convictions, and he had treated his family well." (*Sanchez*, 115 Ill. 2d at 292 (Simon, J., concurring in part & dissenting in part).) Contrary to the defendant's assertion, the record was not devoid of mitigating evidence; trial counsel presented testimony, including that of the defendant and his family members, describing the defendant's development and family environment.

To that extent, then, the defendant's proposed mitigating evidence would have been cumulative of information already before the sentencing jury, and thus

of no effect on the outcome of the sentencing hearing. (See *People v. Mahaffey* (1995), 165 Ill. 2d 445, 467; *People v. Gosier* (1995), 165 Ill. 2d 16, 21; *People v. Hall* (1993), 157 Ill. 2d 324, 338.) The prejudice inquiry at a capital sentencing hearing requires the defense to establish a reasonable probability that the sentencer would not have imposed the death penalty if counsel had not been ineffective. (*Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068-69; *People v. Mahaffey* (1995), 165 Ill. 2d 445, 466.) Given the mitigating evidence introduced at sentencing by the defense, we are unable to conclude that there is a reasonable probability that the additional evidence now suggested by the defendant would have produced a different outcome.

In addition, we believe that other considerations suggest that counsel was not ineffective and made an appropriate choice in limiting the evidence that was introduced. The defense theory at trial was that the defendant had no part in the abduction, assault, and murder of Michelle Thompson or in the attempted murder of Rene Valentine. Although the defendant did not testify in his own behalf at trial, he did take the witness stand during the sentencing hearing. At that time, the defendant resolutely maintained his innocence of the crimes charged here and insisted that he was not guilty of these offenses. For counsel to have presented evidence of a mitigating mental state, as the defendant now suggests, would have been inconsistent with the theory of the defense. See *People v. Holman* (1995), 164 Ill. 2d 356, 373; *People v. Kokoraleis* (1994), 159 Ill. 2d 325, 331.

Finally, we note that evidence of a troubled childhood or of psychological and developmental problems is not inherently mitigating. Such testimony can be viewed as indicative of a defendant's future dangerousness; a jury receiving evidence of a defendant's violent and abusive childhood may consider the person more likely

to commit future misdeeds because of that background. (See *People v. Mahaffey* (1995), 165 Ill. 2d 445, 467-68; *People v. Henderson* (1990), 142 Ill. 2d 258, 335-41.) For these reasons, then, we do not believe that defense counsel was deficient in failing to present more extensive evidence of the defendant's childhood and of his alleged psychological problems.

The defendant also argues that counsel was ineffective in several additional respects at the capital sentencing hearing, and the defendant asserts that counsel lacked the experience to properly represent him during the penalty phase. In support of this contention the defendant first cites a statement made by counsel to the jury in closing argument at the second stage of the sentencing hearing, when counsel began his presentation by saying, "Your Honor, Counsel, Ladies and Gentlemen of the jury, I never did this before, never under the procedures that exist in the State of Illinois, have I done this." Even if this was the first capital sentencing hearing in which counsel had appeared in a long and active career, nothing in that fact alone establishes the attorney's incompetence.

The defendant next asserts that counsel failed to properly question and cross-examine witnesses during the sentencing hearing. The defendant points to testimony given by one prosecution witness on cross-examination that a person convicted of murder in Wisconsin can be released from prison in less than 11 years. The defendant argues that this information was prejudicial because the jury might have feared that release could be available in the present case as well. We note that the trial judge questioned the validity of the witness' statement. Moreover, we do not believe that this isolated reference to early release could have been prejudicial to the defendant.

The defendant also argues that counsel erroneously

failed to introduce, at the sentencing hearing, evidence that the defendant had volunteered to submit to a polygraph examination on the morning after he was arrested for these offenses, and that a prosecution witness had failed a polygraph test. With regard to the latter point, we note, contrary to the defendant's argument, that defense counsel did attempt to introduce the prosecution witness' test results. The trial judge refused to admit the evidence.

The defendant's argument assumes, of course, that polygraph evidence would have been admissible at the sentencing hearing. We do not share that assumption. Our cases have repeatedly held that evidence of polygraph results is not admissible at trial. (See *People v. Gard* (1994), 158 Ill. 2d 191, 201-04; *People v. Baynes* (1981), 88 Ill. 2d 225, 244.) Although the rules of evidence are relaxed at capital sentencing hearings, we do not believe that polygraph evidence carries with it sufficient reliability to warrant its admission even in those circumstances.

In a further challenge to the conduct of trial counsel during the sentencing hearing, the defendant faults his attorney for not having adequately cross-examined prosecution witness Francisco Morales about the defendant's positive attributes. Morales had known the defendant since the early 1970s, and the two men had jointly purchased and maintained an apartment building. The defendant had mentioned to Morales the paternity suit filed by Sharon Egerer, and Morales testified that the defendant had asked him to provide evidence in the defendant's behalf at the proceeding. On cross-examination, Morales stated that the defendant was a good business partner and was honorable in his dealings with Morales. The defendant now asserts that defense counsel should have pursued this line of inquiry further. The defendant does not specify, however, what fur-

ther information Morales might have provided. By having Morales describe the defendant in favorable terms, counsel apparently achieved the very goal the defendant now urges. Moreover, the defendant was on trial for rape and murder, among other charges, not fraud or embezzlement, and we question how valuable or significant further testimony on this subject would have been.

The defendant next argues that trial counsel rendered ineffective assistance with respect to the defendant's waiver of his right to a jury for the first stage of the capital sentencing hearing. In support of this claim, the defendant refers to the following portion of the affidavit submitted by trial attorney George B. Collins:

> "Following the jury verdicts of guilty, I waived Mr. Sanchez' right to a jury determination of death eligibility. The night before his jury waiver, Hector Reuben Sanchez attempted to commit suicide in the County Jail by slashing his wrists with broken glass lenses. Hector Reuben Sanchez could not have knowingly and intelligently waived his right to a jury. He was in no position to understand such a jury right or the consequences of a waiver."

We do not agree with the defendant that defense counsel failed to ensure that the defendant's jury waiver was knowing and intelligent. A review of the court's admonitions to the defendant at the time the waiver was entered establishes that the defendant thoroughly understood the right he was surrendering. The trial judge explained the sentencing procedure to the defendant, and, in response to the judge's questions, the defendant stated that he had not been promised anything in exchange for the waiver, that he had discussed the matter with counsel, and that he was waiving the right freely and voluntarily. We find nothing here that supports the defendant's claim of ineffective assistance.

The defendant mentions further that defense counsel failed to inform him, prior to the jury waiver, that the favorable vote of a single juror would preclude imposi-

tion of the death penalty. We have previously held, however, that knowledge of the rule referred to by the defendant is not a prerequisite for a valid jury waiver. (*People v. Ramey* (1992), 152 Ill. 2d 41, 59-60.) The defendant's waiver in this case was valid, and we do not believe that counsel would have been deficient in failing to inform the defendant of this additional requirement.

In a related argument, the defendant contends that counsel was ineffective because he permitted the defendant to have his sentence determined by a jury that lacked jurisdiction to do so. Without citing any authority for the proposition, the defendant maintains that the jury was not authorized to sit for the second stage of the sentencing hearing once he had waived his right to a jury for the first stage of the hearing.

We fail to see in what way the defect alleged by the defendant demonstrates ineffective assistance of counsel. It was the defendant's wish to waive a jury for only the first stage of the penalty hearing, and counsel assisted him in realizing that goal. The defendant does not explain how he was prejudiced by this division of the sentencing duties. On direct appeal this court was, of course, aware that the defendant had waived a jury for only the first stage of the sentencing hearing, and if there was an appropriate time to challenge the validity of the procedure, it was then.

The defendant next argues that trial counsel was ineffective for failing to make an adequate record that could have supported the conclusion that the jury selected in the defendant's trial was chosen in violation of the principles expressed in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. The defendant's appeal from his convictions and death sentence was pending at the time *Batson* was decided, and thus the new rule announced in *Batson* would have been available to the defendant. *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708.

In making this contention, the defendant does not allege that the jury was chosen in violation of *Batson* but simply asserts that a more complete record could contain evidence that might support such a claim. The present argument is wholly speculative and is insufficient to warrant post-conviction relief. See *People v. Collins* (1992), 153 Ill. 2d 130, 138.

The defendant summarily raises several other allegations regarding the conduct of trial counsel during *voir dire.* The defendant states, without elaboration, that counsel was ineffective for failing to object to the trial judge's exclusion of prospective jurors who merely expressed "thoughtfulness" regarding the death penalty, and to the State's exclusion of several Hispanic-surnamed jurors. The defendant also asserts that trial counsel was ineffective for failing to challenge, either peremptorily or for cause, certain prospective jurors. The defendant has not supported these allegations with any argument or authority, however, and thus we decline to consider them further.

The defendant further argues that he was denied the effective assistance of counsel at trial, alleging several errors by counsel during that phase of the proceedings. The defendant's contentions are all without merit, and they warrant only brief attention here. At trial, co-defendant Warren Peters testified that the defendant and another man, Forest Heinz, had committed a number of crimes together. Defense counsel did not object to Peters' testimony, apparently believing that he could address the issue in his cross-examination of Heinz, whom the prosecution had identified during discovery as a potential witness. The State did not call Heinz as a witness at trial, however, and the defendant now contends that defense counsel was ineffective for having failed to subpoena Heinz. This court considered a similar issue on direct appeal, concluding then that

the State had not denied the defendant a fair trial by its failure to call Heinz as a witness. (*Sanchez*, 115 Ill. 2d at 266-67.) The defendant further fails to establish that he was prejudiced by his counsel's alleged shortcoming. The evidence of guilt in this case was overwhelming, and we do not believe that counsel's failure to obtain the witness' testimony could have had any effect on the outcome of the trial.

The defendant also complains that defense counsel described him unfavorably to the jury. Specifically, the defendant takes issue with counsel's following comments, made in opening statement at trial:

> "Hector, strange to say, is not able to read and write. He's a worker, with his hands. He is a man who has certain—has the ability to hold down a job as a furnace repairman, but does not have the ability to read and write. He is not an unusually clever man."

The defendant rejects this portrayal and argues that a more complete investigation of the circumstances of his life would have led counsel to provide the jury with a different picture. We do not agree. As we have noted, defense counsel presented mitigating evidence at the second stage of the sentencing hearing; counsel's thumbnail sketch of the defendant in the few sentences quoted above was not the only portrait of the defendant given to the jury.

The defendant next argues that trial counsel impermissibly overrode his constitutional right to testify in his own behalf at trial. The defendant did not take the witness stand at the guilt-innocence phase of the proceedings but did do so at the second stage of the sentencing hearing. In support of the present claim the defendant offers the following excerpt from the affidavit of trial attorney George B. Collins:

> "At the guilt-innocence phase of his trial, Hector-Reuben Sanchez wished to testify in his own behalf. The night before Mr. Sanchez would have testified, I visited

him at the jail and spent five (5) hours preparing him for his testimony. He was fully prepared to take the witness stand the next morning. Without consulting him, I overrode his right to testify. I ordered him not to testify."

Notwithstanding counsel's assertion that he "ordered" the defendant not to testify, we do not agree with the defendant that the decision was anything other than the defendant's own choice, reached after consultation with his attorney. During the defendant's testimony to the jury during the second stage of the sentencing hearing, defense counsel mentioned that he had advised the defendant not to testify during the guilt phase of the proceedings. The following colloquy ensued:

"Q. Mr. Sanchez, did I advise you not to testify at the trial the other day?

A. Yes, we discussed it.

Q. I told you not to?

A. You didn't tell me. We discussed it. You said that I did not have to come up here and prove that I was guilty or innocent of the charges they were charging me with.

Q. So, you didn't testify?

A. I didn't testify."

Similarly, in argument on the defendant's post-trial motion, counsel explained to the judge that the defendant had decided not to testify based on counsel's advice. The defendant has presented no grounds for post-conviction relief on this allegation. See *People v. Thompkins* (1994), 161 Ill. 2d 148, 177-78.

In an additional challenge to counsel's performance at trial, the defendant argues that his attorneys were not adequately prepared to cross-examine prosecution witness Harold Deadman, a special agent with the Federal Bureau of Investigation who testified in the State's behalf as an expert on hair and fiber evidence. The defendant relies on the statement in the affidavit of trial attorney Collins that he was unfamiliar with one of the prosecution exhibits considered by Deadman and that he was therefore unable to adequately cross-

examine the witness on that topic. The defendant additionally contends that counsel's unpreparedness enabled Deadman to lecture at length to the jury, without interruption, for a period that spans five pages of the trial transcript.

Notwithstanding counsel's candor, we do not agree with the defendant that counsel's admitted lack of preparation amounted to ineffective assistance of counsel. The portion of the transcript cited by the defendant merely contains a general discussion by Deadman of the techniques of hair analysis. Moreover, we do not believe that counsel's lack of familiarity with the exhibit in question could have had any effect on the outcome of the defendant's trial. To establish a violation of the right to effective assistance of counsel, the defendant must show not only a deficiency in counsel's performance but also prejudice resulting from the deficiency. Assuming that counsel was deficient, we do not believe that the defendant was prejudiced. The prosecution presented overwhelming evidence of the defendant's guilt, including the eyewitness testimony of Rene Valentine and of codefendant Warren Peters. Valentine told the jury that the defendant was one of the two men who approached his car, removed him and Michelle Thompson from the vehicle, shot him, and abducted Thompson. Codefendant Peters, testifying in behalf of the prosecution, described in detail the defendant's later sexual assault and murder of Thompson, and the removal of the body to Wisconsin, where it was later found. On this record, counsel's admitted failure to prepare fully for the expert testimony would have been of no consequence.

In a footnote in his brief, the defendant lists 11 other ways in which counsel allegedly rendered ineffective assistance at trial. The defendant fails to support these allegations with any argument or authority, however. We deem these questions waived and will not consider them

further. See 155 Ill. 2d R. 341(e)(7); *People v. Felella* (1989), 131 Ill. 2d 525, 540; *Collins v. Westlake Community Hospital* (1974), 57 Ill. 2d 388, 391-92.

The defendant last argues that counsel was ineffective in representing him during the post-trial motion and on appeal by failing to preserve numerous allegations of error for review. The defendant identifies 19 issues that counsel did not include in the post-trial motion and five issues that counsel did not raise on appeal. Again, the defendant merely lists these issues in his brief, however, and fails entirely to present any argument or authority in support of these contentions. We decline to address these issues on their merits.

III. Denial of Post-Conviction Motions

In his final series of challenges to the resolution of his post-conviction petition, the defendant argues that the post-conviction court improperly denied a number of motions during the proceedings below.

The defendant first argues that the post-conviction judge erred in denying a defense motion seeking funds for the appointment of certain experts. The defendant wished to retain, among others, a psychiatrist and a psychologist, and asked the court to appoint Dr. Henry Conroe, a psychiatrist, Dr. Alan Rosenwald, a psychologist, as experts in this case. In support of his request, the defendant submitted affidavits from the two men. They stated that, based on their review of certain portions of the trial transcript and of affidavits by defense counsel, and on discussions with defense counsel, they believed that the defendant might have been afflicted with organic brain damage. The defendant argues that their testimony would have been vital to the defendant's argument that counsel was ineffective in failing to present evidence of the defendant's mental and emotional problems as mitigating evidence at the second stage of the sentencing hearing.

We find no abuse of discretion in the post-conviction judge's failure to appoint the expert witnesses. We have already determined that defense counsel was not ineffective for failing to present, at the second stage of the sentencing hearing, evidence that would show that the defendant was laboring under a mental or emotional disturbance at the time in question here. As we have noted, testimony of that nature would have been at odds with the defense theory that the defendant was not guilty of the charged offenses.

The defendant makes the related contention that, under *Ake v. Oklahoma* (1985), 470 U.S. 68, 84 L. Ed. 2d 53, 105 S. Ct. 1087, the failure of the post-conviction court to appoint the proposed experts denied him equal protection. We do not agree. Discussing *Ake*, we have previously determined "that there is no constitutional requirement that we duplicate the rights of a particular class of individuals in post-conviction proceedings." (*People v. Wright* (1992), 149 Ill. 2d 36, 61.) The post-conviction court here was not required to make the appointment; it was a matter of discretion.

The defendant next alleges error in the denial of a defense motion for change of judge. The motion was, originally presented to the post-conviction judge, Judge Block, who referred it to another judge, Judge Scott, for disposition. Judge Scott denied the motion after argument by the parties.

The defendant bases the motion on certain comments made by Judge Block at a hearing on the post-conviction petition, in which Judge Block noted how convinced he had been of the defendant's fitness following the suicide attempt at the time of the sentencing hearing. The defendant contends that Judge Block's comments indicate that he was deciding the issue on the basis of his personal observations and knowledge outside the record. We find no error in Judge Block's comments,

or in his limited reliance on his own observations of the defendant. (See *People v. Titone* (1992), 151 Ill. 2d 19, 25-27.) Moreover, unlike *People v. Wilson* (1967), 37 Ill. 2d 617, on which the defendant relies, there was no suggestion in this case that Judge Block was a potential witness in a further proceeding. In argument before Judge Scott, who decided the motion for change of judge, defense counsel expressly disclaimed any intention of calling Judge Block as a witness.

The defendant next argues that the post-conviction judge erred in denying a defense motion seeking to compel discovery depositions of witnesses to the defendant's suicide attempt. The defendant asserts that these persons might be able to provide additional evidence regarding the defendant's mental condition on the day of his suicide attempt. The defendant has not explained, however, what these potential witnesses might say. Given our conclusion that the trial judge committed no error in failing to conduct a fitness hearing, however, we must also conclude that the post-conviction court's denial of this motion was not an abuse of discretion. See *People ex rel. Daley v. Fitzgerald* (1988), 123 Ill. 2d 175.

In his final series of arguments, the defendant contends that the post-conviction court below erred in denying a defense motion to supplement the amended post-conviction petition with additional documentation. We find no abuse of discretion by the court in denying this motion. Counsel made the motion in November 1990, several weeks after the parties had presented arguments on the State's motion to dismiss the amended post-conviction petition. The additional documents that the defendant wished to present at that time consisted of the defendant's prison records, a letter from Donald Berlin, trial counsel's investigator, disclosing the location of his files in this case, a letter from a woman who was teaching the defendant how to read while he was

incarcerated, and an affidavit from one of the defendant's sisters. We believe that the post-conviction court acted within its considerable discretion in denying the defendant's motion.

We note that the defendant refers, in a footnote in his brief, to several other motions denied by the post-conviction judge. As he has done before, however, the defendant fails entirely to offer any argument or authority in support of the bare assertion that the post-conviction court erred in denying the additional motions. Accordingly, we decline to address these additional allegations of error.

\* \* \*

For the reasons stated, the judgment of the circuit court of Lake County is affirmed. The clerk of this court is directed to enter an order setting Thursday, May 30, 1996, as the date on which the sentence of death entered in the circuit court of Lake County is to be carried out. The defendant shall be executed in the manner provided by law (725 ILCS 5/119—5 (West 1994)). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution where the defendant is now confined.

*Judgment affirmed.*

JUSTICE HARRISON took no part in the consideration or decision of this case.