NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190235-U

NO. 4-19-0235

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 11, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Cumberland County |
| LAMONT A. MIMMS, | ) | No. 16CF35 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | David W. Lewis, |
| | ) | Judge Presiding. |

---

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices DeArmond and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court granted the Office of the State Appellate Defender's motion to withdraw and affirmed the trial court's denial of defendant's postconviction petition where no meritorious issues could be raised on appeal.

¶ 2    This case comes to us on the motion of the Office of the State Appellate Defender (OSAD) to withdraw as counsel on appeal on the ground no meritorious issues can be raised in this case. Defendant, Lamont A. Mimms, filed, *pro se*, a response in opposition to OSAD's motion to withdraw, alleging several issues merit review. The State asserts OSAD's motion to withdraw is proper where there exist no meritorious issues for review. For the reasons that follow, we grant OSAD's motion and affirm the trial court's judgment.

¶ 3                                   I. BACKGROUND

¶ 4    On October 3, 2016, the State filed an amended information charging defendant with (1) first degree murder (720 ILCS 5/9-1(a)(3) (West 2014)) (count I), where on or about

July 20, 2016, while committing an armed robbery of Kyle Covault, defendant proximately caused the death of Eric Lavaly who was shot and killed; (2) attempted first degree murder (720 ILCS 5/8-4(a) (West 2014)) (count II), where defendant, with the intent to commit the offense of first degree murder, performed a substantial step toward the commission of that offense, in that he shot Covault multiple times with a firearm; (3) armed robbery (720 ILCS 5/18-2(a)(2) (West 2014)) (count III), where defendant, while carrying a firearm on his person, knowingly took property belonging to Covault, being a bag of cannabis, from the presence of Covault, by use of force; and (4) unlawful possession of weapons by a felon (720 ILCS 5/24-1.1(a) (West 2014)) (count IV). Counts I and II invoked a 25-year firearm enhancement for proximately causing death or great bodily harm. Also on October 3, 2016, defendant was arraigned and appointed a public defender, Edward Deters.

¶ 5        At an October 17, 2016, preliminary hearing, the trial court found the State met its burden of establishing "probable cause to hold [defendant] over for further proceedings with respect to the felony counts in the [a]mended [i]nformation." On October 24, 2016, defendant, through Deters, filed a plea of not guilty and demand for speedy jury trial.

¶ 6                                A.  Guilty Plea

¶ 7        At a November 23, 2016, hearing, the State announced the parties reached an agreement to resolve the case and tendered a second amended information charging defendant with first degree murder (720 ILCS 5/9-1(a)(3) (West 2014)), without a firearm enhancement. Under the agreement, defendant would plead guilty to the amended charge in exchange for a 23-year sentence.

¶ 8        Defense counsel informed the trial court, "[Defendant] and I kind of, over the last two weeks, have been engaged in what I would consider to be extensive communication,

including me going to the jail for, I don't know 10 hours probably over the course of a couple days, discussing his case." Defense counsel noted that much of the discovery had not yet been received. Defense counsel also explained that he told defendant there was "no guarantee whatsoever that the same offer that he will be accepting today will be available when the new [s]tate's [a]ttorney takes office." Defense counsel stated defendant called him from jail that morning wanting to take the plea.

¶ 9        The trial court noted that based on its observation of defendant, it appeared that defendant understood the proceedings and comprehended the strengths and weaknesses of entering a plea. However, the court stated,

"But one of the concerns I always have is the reason for entering a plea. I don't want somebody to feel they were coerced to do something or they were under duress, time constraints, those types of things. I want people to enter into pleas because they want to do it, not because they're pressured, not because they feel they have to do it because of a change in administration, something that doesn't pertain to you and your case.

*** What I don't want to do is to have a defendant say, 'Judge, because of the turmoil, that is there will be a new state's attorney, there will be a new judge, there are all sorts of different things that can happen, I've decided to take this plea because I just don't know what will happen in the future with other people.' I want to be totally, this be totally focused on you. That is what you want without the other considerations. Clearly other

considerations enter into a decision, but the primary focus must be what you want at this point in time."

¶ 10 The court then addressed another concern being that "there may be other evidence that you can look at and develop to help you with your case that simply isn't available now." The court asked defendant,

"If you're not comfortable in any way, if there's any indecision at all, then I need to hear from you on that; and we need to save this for another day. But I've heard from your attorney, and I'll ask you in a moment whether you feel comfortable enough to go forward today, that you don't have any misgivings about proceeding today on the plea agreement. And if that's so, we will go forward. But if you tell me on the other hand that you want more time with your attorney to discuss the evidence in the case or to await more evidence that might be available to you, then we can, we can continue this to another time. So I want to hear from you as to how you want to proceed, if you want to go forward with the plea agreement today or you want to give a second thought to it and maybe come back another day."

Defendant responded, "I want to proceed."

¶ 11 The trial court then stated, "I want to make sure from my standpoint you haven't been threatened or coerced or operating under some sort of duress where you feel 'I've got to do it today' because of some added pressure that you're getting from family, friends, attorneys,

whomever.  I don't believe you're operating under that pressure, but only you can tell me whether you are or aren't."  Defendant responded, "No.  No, Sir."

¶ 12            The State indicated for the record that,

> "Defendant would be pleading guilty to the offense of [f]irst [d]egree [m]urder under the [s]econd [a]mended [i]nformation.  In exchange for that plea of guilty, the original [i]nformation, as well as the [a]mended [i]nformation filed, would be withdrawn.

> As far as a sentence is concerned, he would be sentenced to 23 years in the Department of Corrections."

¶ 13            The trial court addressed the plea and defendant acknowledged he understood the plea and was giving up his right to a trial.  The State then presented a factual basis summarizing the evidence it would present if the case were to proceed to trial.  Defendant agreed the evidence would "show substantially what has been stated by the State in this case."  The State also addressed defendant's criminal history: a 2004 aggravated battery and a 2015 robbery, as well as a pending 2016 Coles County aggravated battery charge.  At defendant's prompting, defense counsel noted the aggravated battery conviction was from 2014, not 2004.

¶ 14            The trial court then stated, "I want to make sure your plea is knowingly and intelligently made of your own free will, [defendant]. I addressed this earlier. I want to do it again.  Any force or threat used to cause you to plead guilty today?"  Defendant responded, "No." Defendant also acknowledged he voluntarily entered his plea.  The court asked defendant a few questions and determined defendant understood the plea.  However, the court said,

"Having said all that, [defendant], considering all that we've done, you still have the right to plead not guilty if that's what you want in this case. In other words, your can say, 'Judge, I've changed my mind. I know we've gone through a portion of the sentencing hearing, but I want to reconsider.' If that's what you want, now is the time to tell me. Do you still want to plead guilty under the terms of the plea agreement, sir?"

Defendant responded, "Yes." Defendant then pleaded guilty to first degree murder under the second-amended information. The court accepted the plea and sentenced defendant to 23 years in prison. The court then admonished defendant regarding his right to appeal, about which he had no questions.

¶ 15 On February 6, 2017, defendant filed a *pro se* motion "to consider my late notice to withdraw my guilty plea." In the motion, defendant argued he (1) "could not obtain legal material or access nor assistance" from November 29, 2016, to January 4, 2017, at his correctional facility and (2) did not commit the crime that he pleaded guilty to and that he was forced to plead guilty by his attorney, Deters. In an April 28, 2017, written order, filed May 4, 2017, the trial court denied defendant's motion, finding "[s]ince the time for filing such a motion has long since passed," it lacked jurisdiction to review defendant's case.

¶ 16 B. Postconviction Proceedings

¶ 17 On April 26, 2018, defendant filed a *pro se* postconviction petition, alleging (1) ineffective assistance of trial counsel where his counsel failed to file a motion to reconsider or notice of appeal from his guilty plea; (2) ineffective assistance of his trial counsel where his counsel coerced him into pleading guilty in order to benefit the state's attorney, who was

becoming a judge; and (3) his guilty plea resulted from duress, making it involuntary and unintelligently made.

¶ 18    On July 17, 2018, the trial court advanced defendant's petition to second stage proceedings and appointed counsel to represent defendant. On August 16, 2018, the State filed a response to defendant's petition. On October 26, 2018, appointed postconviction counsel filed an Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) certificate.

¶ 19    On March 1, 2019, the case proceeded to an evidentiary hearing on defendant's *pro se* postconviction petition. Below, we summarize the relevant testimony elicited at the evidentiary hearing.

¶ 20    1. *Defendant*

¶ 21    Defendant testified he and Deters discussed his November 23, 2016, plea for about 10 hours over the span of 10 days prior to his plea hearing. During those discussions, Deters never asked defendant his version of the events on July 20, 2016, but defendant admitted Deters did not prohibit him from sharing information. Deters discussed accountability and felony murder with defendant.

¶ 22    Defendant failed to recall if he telephoned Deters on the morning of November 23, 2016, to inform him he wanted to take the plea deal. Defendant testified he entered the plea agreement because he felt pressured. Specifically, defendant stated,

> "Because I got, like I say, about the state's attorney going
> to judge and trying to resolve the case so fast that my attorney
> basically told me that that would be the only deal probably would
> be going with the new state's attorney, meaning that I probably
> wouldn't get the offer of 20 years. It would be forced to trial. And

he also told me that, that would be my Black Friday of the whole situation. So I felt I really had no choice, either that or basically life. That's the way he made it seem to me."

Defendant admitted that during the November 23, 2016, hearing, he told the court he was not coerced or under duress and that he caught the error about the date of his prior aggravated battery.

¶ 23 Defendant testified that immediately after he entered his guilty plea, he talked to Deters in the jury room. Defendant told Deters he did not want to go with the plea and he asked, "is there any way he can appeal or reconsider the sentence." Deters told defendant he would get back with him on it, but defendant never heard from him. Defendant did not follow up with Deters even though he was aware of the 30-day time limit to file any kind of motion to withdraw his guilty plea. Defendant testified he did not discover that Deters did not file an appeal or motion to withdraw his plea until he received transcripts in July 2017. While incarcerated, defendant had access to a telephone to contact Deters. Defendant also testified to his version of the July 20, 2016, events, stating that he did not have a firearm and did not attempt any robbery.

¶ 24                                    2. *Edward Deters*

¶ 25 Deters testified that in October 2016 he was appointed to represent defendant and ultimately defendant entered into a plea agreement with the State. Deters explained that by November 23, 2016, he and defendant had discussed the plea agreement for "approximately two or three weeks prior." During that time, Deters spent approximately 10 hours at the jail discussing the case with defendant and a lot of that time was spent watching case related videos. Defendant and Deters also spoke on the telephone about a dozen times or more.

¶ 26        Deters testified he researched whether it mattered for felony murder purposes that decedent was defendant's co-conspirator and determined that it did not.  Deters did not recall discussing defendant's version of the events of July 20, 2016, in detail.  Rather, Deters testified he was hesitant to get a client's full story until he received all the discovery.  Deters recalled explaining to defendant that he faced a minimum of 45 years' imprisonment if convicted at trial as opposed to the negotiated 23-year sentence with the State.  Deters discussed the change of state's attorney with defendant and how defendant might not be given the same offer after the change, noting that he made a record of the discussion.  Deters denied forcing defendant to accept the plea deal.  Specifically, Deters stated, "I'm sure I told him multiple times 'I'm not trying to force to you [*sic*] take this deal.  Only you can decide to take this deal.  I'm not going to try and twist your arm.  But it's a really good offer, and it may be off the table by December 1st.' "

¶ 27        Defendant contacted Deters the day before November 23, 2016, and informed him he wanted to take the plea deal.  The trial judge admonished defendant before he took the plea and Deters felt that if the judge had seen any hesitation he would have followed up with defendant.

¶ 28        Deters recalled speaking with defendant in the jury room after defendant accepted the plea agreement.  Deters informed defendant "he had 30 days within which to withdraw his guilty plea if he changed his mind."  However, Deters stated, "I think I would have probably phrased it that I would have thought he was foolish if he changed his mind."  Deters testified defendant "certainly didn't look me in the eye and say 'I have changed my mind. I don't want to go through with this.' "  Deters explained that if defendant had changed his mind, he would have returned to the courtroom or found the state's attorney to notify him of the change.  Defendant

also never contacted Deters after he accepted the plea agreement to say he changed his mind. Deters testified he had no doubt that defendant's plea was voluntary, intelligent, and uncoerced at the time it was made. Deters also testified he did not think the state's attorney received "some big benefit to the deal" made with defendant.

¶ 29　　Following closing arguments, the trial court took the matter under advisement. On March 19, 2019, the court issued a written order denying defendant's petition for postconviction relief. The court summarized that the evidentiary hearing addressed, "the claim that [defendant] was denied the effective assistance of counsel by his attorney's failure to file a motion to reconsider sentence or notice of appeal and that the defendant's negotiated guilty plea was coerced by counsel." The court found "[a] review of the transcript of the negotiated plea clearly establishe[d] there was no coercion or involuntary entry of a guilty plea by the defendant." Further, "[t]he transcript clearly and completely impeaches the credibility of [defendant] in the assertion his guilty plea was coerced." Additionally, the court found defendant's testimony that he immediately requested a motion to reconsider or appeal be filed was unbelievable and defendant's "credibility ha[d] been severely damaged by his prior claim that is without support in the court record."

¶ 30　　This appeal followed. On appeal, OSAD, appointed counsel for defendant, filed a motion for leave to withdraw as defendant's counsel and attached a memorandum of law, citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987), *People v. Kuehner*, 2015 IL 117695, 32 N.E.3d 655, and *People v. Meeks*, 2016 IL App (2d) 140509, 51 N.E.3d 1109.

¶ 31　　　　　　　　　　　　　II. ANALYSIS

¶ 32　　On appeal, OSAD argues this case presents no potentially meritorious issues for review. Defendant filed a *pro se* response in opposition to OSAD's motion to withdraw, alleging

several issues merit review. The State asserts OSAD's motion to withdraw is proper where there exist no meritorious issues for review. We grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 33        The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a means by which a defendant may challenge his conviction for violations of federal and state constitutional rights. *People v. Pendleton*, 223 Ill. 2d 458, 471, 861 N.E.2d 999, 1007 (2006). The Act provides a three-stage process by which a defendant may obtain a remedy for the substantial denial of his constitutional rights at trial. *Pendleton*, 223 Ill. 2d at 471-72. A postconviction petition that survives the first and second stages of the Act progresses to a third and final stage. *Id.* at 472-73.

¶ 34        At the third stage of postconviction proceedings, the trial court holds an evidentiary hearing wherein the defendant may present evidence in support of the petition. *Id.* "At such a hearing, the *** court serves as the fact finder, and therefore, it is the court's function to determine witness credibility, decide the weight to be given testimony and evidence, and resolve any evidentiary conflicts." *People v. Domagala*, 2013 IL 113688, ¶ 34, 987 N.E.2d 767. We will not reverse a court's decision to dismiss defendant's claim after conducting an evidentiary hearing unless it is manifestly erroneous. *People v. Childress*, 191 Ill. 2d 168, 174, 730 N.E.2d 32, 35 (2000). "[A] decision is manifestly erroneous when the opposite conclusion is clearly evident." *People v. Coleman*, 2013 IL 113307, ¶ 98, 996 N.E.2d 617.

¶ 35        OSAD moves to withdraw, arguing this appeal presents no nonfrivolous argument that the trial court erroneously denied defendant's postconviction petition. Defendant's *pro se* postconviction petition raised claims of ineffective assistance of his trial counsel. Specifically, defendant's petition alleged ineffective assistance of trial counsel where his counsel (1) failed to

file a motion to reconsider or notice of appeal from his guilty plea and (2) coerced him into pleading guilty in order to benefit the state's attorney, who was becoming a judge. Defendant's postconviction petition also alleged his guilty plea resulted from duress, making it involuntary and unintelligently made. OSAD argues defendant's claims present no potentially meritorious issues for review.

¶ 36                          A. Ineffective Assistance of Trial Counsel

¶ 37          "[T]he right to counsel is the right to the effective assistance of counsel." (Internal quotation marks omitted.) *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Generally, to demonstrate ineffective assistance of counsel, defendant must show counsel's (1) performance fell below an objective standard of reasonableness and (2) deficient performance resulted in prejudice to the defendant such that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688, 694. If a defendant fails to prove either prong of the *Strickland* test, his claim for ineffective assistance of counsel must fail. *People v. Sanchez*, 169 Ill. 2d 472, 487, 662 N.E.2d 1199, 1208 (1996). "[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

¶ 38          Here, defendant's *pro se* postconviction petition proceeded to an evidentiary hearing where both defendant and Deters testified. After hearing all the evidence, the trial court issued a written order denying defendant's postconviction petition. Specifically, the court found "[a] review of the transcript of the negotiated plea clearly establishes there was no coercion or involuntary entry of a guilty plea by the defendant." Further, "[t]he transcript clearly and completely impeaches the credibility of [defendant] in the assertion his guilty plea was coerced." Additionally, the court found defendant's testimony that he immediately requested a motion to

- 12 -

reconsider or appeal be filed was unbelievable and defendant's "credibility ha[d] been severely damaged by his prior claim that is without support in the court record."

¶ 39 We agree with OSAD and the trial court that defendant's claims in his postconviction petition lack merit. As it relates to his obligation under *Strickland*, defendant cannot establish that it is arguable counsel's performance fell below an objective standard of reasonableness or that defendant was prejudiced by counsel's performance.

¶ 40 Defendant alleged Deters provided ineffective assistance of counsel where he coerced him into pleading guilty in order to benefit the state's attorney, who was becoming a judge. At the evidentiary hearing, defendant testified he entered the plea agreement because he felt pressured.

¶ 41 Deters testified he spent approximately 10 hours discussing the plea agreement with defendant two to three weeks prior to defendant entering his plea. Deters denied forcing defendant to accept the plea deal. Deters testified he had no doubt that defendant's plea was voluntary, intelligent, and uncoerced at the time it was made. Further, Deters denied defendant's plea benefitted the state's attorney in any way.

¶ 42 Following the evidentiary hearing, the trial court found Deters's testimony credible and defendant's assertion that his guilty plea was coerced lacked credibility. Further, the court found "[a] review of the transcript of the negotiated plea clearly establishe[d] there was no coercion or involuntary entry of a guilty plea by the defendant." "[W]e must give great deference to the court's factual findings because the trial court stands in the best position to weigh the credibility of the witnesses." (Internal quotation marks omitted.) *People v. Hotwagner*, 2015 IL App (5th) 130525, ¶ 31, 40 N.E.3d 1235.

¶ 43        During the negotiated plea hearing, the trial court noted that based on its observation of defendant, it appeared he understood the proceedings and comprehended the strengths and weaknesses of entering a plea.  However, the court asked defendant a series of questions to gauge whether defendant understood the plea, had not been coerced into the plea, and was not under any duress in entering the plea.  The court gave defendant multiple opportunities to decline the plea.  Defendant acknowledged he voluntarily entered his plea.  Months later, beyond the 30-day timeframe for a motion to withdraw his guilty plea, defendant filed a *pro se* motion "to consider my late notice to withdraw my guilty plea."  In his motion, defendant alleged Deters forced him to plead guilty.  The court denied defendant's motion, finding it lacked jurisdiction to review the case.

¶ 44        Defendant also alleged Deters provided ineffective assistance of counsel where he failed to file a motion to reconsider or notice of appeal from his guilty plea.  Counsel is ineffective when a defendant has requested that counsel file a motion to reconsider sentence or a notice of appeal and counsel fails to do so.  *People v. Jennings*, 345 Ill. App. 3d 265, 272-74, 802 N.E.2d 867, 874-75 (2003).

¶ 45        At the evidentiary hearing, defendant testified that immediately after he entered his guilty plea, he talked to Deters in the jury room.  Defendant told Deters he did not want to go with the plea and asked "is there any way he can appeal or reconsider the sentence."  Deters told defendant he would get back with him on it, but defendant never heard from him.

¶ 46        While Deters recalled speaking with defendant following the plea hearing, Deters testified defendant never asked him to file an appeal or motion to withdraw his plea.  Deters testified defendant "certainly didn't look me in the eye and say 'I have changed my mind. I don't want to go through with this.' "  Deters explained that if defendant had changed his mind, he

- 14 -

would have returned to the courtroom or found the state's attorney to notify him of the change. Defendant also never contacted Deters after he accepted the plea agreement to say he changed his mind. Defendant admitted he did not follow up with Deters even though he was aware of the 30-day time limit to file a motion to withdraw his guilty plea. Defendant also acknowledged he had access to a telephone to contact Deters.

¶ 47    The trial court found defendant's testimony that he immediately requested a motion to reconsider or appeal be filed was unbelievable and defendant's "credibility ha[d] been severely damaged by his prior claim that is without support in the court record."

¶ 48    Based on the evidence, we conclude Deters's performance did not fall below an objective standard of reasonableness. Rather, Deters reasonably assisted defendant prior, during, and after his guilty plea. Further, defendant failed to show that Deters's performance prejudiced defendant. Thus, we find defendant's ineffective assistance of counsel claims fail.

¶ 49    The record establishes defendant's guilty plea did not result from duress where it was voluntarily and intelligently made. Therefore, the trial court's denial of defendant's postconviction petition was not manifestly erroneous where the opposite conclusion was not clearly evident.

¶ 50                    B. Reasonable Assistance of Postconviction Counsel

¶ 51    OSAD also argues this case presents no meritorious issues for review where postconviction counsel provided reasonable assistance of counsel.

¶ 52    The right to counsel in postconviction proceedings is wholly statutory, and petitioners are only entitled to the level of assistance provided for in the Act. *People v. Suarez*, 224 Ill. 2d 37, 42, 862 N.E.2d 977, 979 (2007) (citing *People v. Turner*, 187 Ill. 2d 406, 410, 719

N.E.2d 725, 727-28 (1999)).  "The Act provides for a reasonable level of assistance."  *Id.* (citing *People v. Flores*, 153 Ill. 2d 264, 276, 606 N.E.2d 1078, 1084 (1992)).

¶ 53        In order to assure a reasonable level of assistance, Rule 651(c) requires that postconviction counsel (1) consult with petitioner by phone, mail, electronic means, or in person to ascertain his or her contentions of deprivation of constitutional rights, (2) examine the record of the proceedings at the trial, and (3) make any amendments necessary to the *pro se* petition to adequately present petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017).  Our supreme court has consistently held remand is required when postconviction counsel fails to complete any one of the above duties, regardless of whether the claims raised in the petition have merit. *Suarez*, 224 Ill. 2d at 47.  Additionally, "[f]ulfillment of the third obligation does not require counsel to advance frivolous or spurious claims on defendant's behalf."  *Pendleton*, 223 Ill. 2d at 472; see also *People v. Greer*, 212 Ill. 2d 192, 205, 817 N.E.2d 511, 519 (2004).

¶ 54        Here, appointed counsel filed a certificate pursuant to Rule 651(c).  "The filing of a facially valid Rule 651(c) certificate creates a rebuttable presumption that counsel acted reasonably and complied with the rule."  *People v. Wallace*, 2016 IL App (1st) 142758, ¶ 25, 67 N.E.3d 976.  However, appointed counsel declined to make additional amendments to defendant's *pro se* postconviction petition.  "[T]here is no requirement that post-conviction counsel *must* amend a defendant's *pro se* petition."  (Emphasis in original.)  *People v. Spreitzer*, 143 Ill. 2d 210, 221, 572 N.E.2d 931, 936 (1991) (citing *People v. Bowman*, 55 Ill. 2d 138, 140, 302 N.E.2d 318, 319-20 (1973)).

¶ 55        The record in this case shows defendant's postconviction counsel consulted with him and examined the record.  At the evidentiary hearing, counsel examined defendant as a witness, cross-examined Deters, and argued the points raised in defendant's *pro se* petition on

behalf of defendant. Defendant never rebutted the presumption that counsel provided reasonable assistance.

¶ 56        Accordingly, we find counsel complied with Rule 651(c). Thus, there is no arguable merit to a claim that postconviction counsel failed to provide reasonable assistance of counsel.

¶ 57                              III. CONCLUSION

¶ 58        For the reasons stated, we grant OSAD's motion to withdraw as counsel on appeal and affirm the trial court's order denying defendant's postconviction petition.

¶ 59        Affirmed.