# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Erin A.*, 2012 IL App (1st) 120050

---

| | |
|---|---|
| Appellate Court Caption | *In re* ERIN A. and ALICIA A., Minors, Respondents-Appellees (The People of the State of Illinois, Petitioner-Appellee, v. Jermika A., Respondent-Appellant). |
| District & No. | First District, First Division<br>Docket No. 1-12-0050 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | June 29, 2012<br><br>August 16, 2012<br>August 20, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Respondent's children were properly found neglected based on the evidence that respondent's older child had not been provided with necessary medical care and, pursuant to the doctrine of anticipatory neglect, a younger child would probably experience similar neglect, and furthermore, the children's father threatened to "shoot up the neighborhood" if anyone tried to take away his children. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 10-JA-00561, 10-JA-01071; the Hon. Helaine Berger, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Abishi C. Cunningham, Jr., Public Defender, of Chicago (Eileen T. Pahl, Assistant Public Defender, of counsel), for appellant.

Robert F. Harris, Public Guardian, of Chicago (Kass A. Plain and Susan S. Wigoda, of counsel), for appellees Erin A. and Alicia A.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, and Jenifer Streeter, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE HALL delivered the judgment of the court, with opinion.

Presiding Justice Hoffman and Justice Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1    Respondent, Jermika A., appeals from an adjudicatory order of the trial court finding her minor daughter Erin, born December 5, 2009, neglected as a result of respondent's failure to provide her with necessary medical care pursuant to section 2-3(1)(a) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(a) (West 2010)). This section of the Act provides in relevant part that a neglected minor includes "any minor under 18 years of age who is not receiving the proper or necessary *** medical or other remedial care recognized under State law as necessary for a minor's well-being." 705 ILCS 405/2-3(1)(a) (West 2010).

¶ 2    The trial court's finding of medical neglect was based on the court's determination that respondent failed to have Erin undergo recommended follow-up blood screening to determine if she had sickle cell disease or merely the trait.[1] Evidence was presented that respondent refused to have Erin undergo the recommended follow-up medical care because the child's biological father, Aaron A., did not want the State to get involved in the testing because he did not want to be required to pay child support.

¶ 3    Respondent also challenges the trial court's adjudicatory order finding that Erin's younger sister, Alicia, born November 12, 2010, was neglected as a result of an injurious environment under section 2-3(1)(b) of the Act, which provides that a neglected minor

---

[1]The screening of newborns for identification of specific diseases such as sickle cell is mandated by statute and code regulations. See 410 ILCS 240/1 et seq. (West 2010) (the Newborn Metabolic Screening Act); 77 Ill. Adm. Code 661.10, amended at 34 Ill. Reg. 940 (eff. Dec. 31, 2009); see also 22 Robert John Kane, Ross D. Silverman, & Lawrence E. Singer, Illinois Practice § 26:4 (3d ed. 2007).

includes "any minor under 18 years of age whose environment is injurious to his or her welfare." 705 ILCS 405/2-3(1)(b) (West 2010). This finding was based in part on the doctrine of anticipatory neglect in that the trial court determined that Alicia was in an injurious environment based on the finding that her sibling Erin had been found to have been neglected. The trial court's finding was also based on the court's determination that Aaron A. had made threatening remarks to a caseworker stating he would shoot up the neighborhood if anyone tried to take away his children. For the reasons that follow, we affirm.

¶ 4                                    ANALYSIS

¶ 5       Respondent first contends that the trial court's adjudicatory finding that Erin was medically neglected was against the manifest weight of the evidence where there was no testimony from a doctor or other medical expert establishing that the failure to have Erin undergo the follow-up blood screening posed a risk of harm. We disagree.

¶ 6       The purpose of an adjudicatory hearing is to determine whether an allegation that a minor is neglected is supported by a preponderance of the evidence. *In re Arthur H.*, 212 Ill. 2d 441, 465 (2004). The term "neglect" has generally been defined as the failure of a responsible adult to exercise the care that circumstances demand and encompasses both unintentional and willful disregard of parental duties. *In re John Paul J.*, 343 Ill. App. 3d 865, 879 (2003). Cases involving an adjudication of neglect are *sui generis* and each case must ultimately be decided on the basis of its own particular facts. *In re Christina M.*, 333 Ill. App. 3d 1030, 1034 (2002).

¶ 7       Our courts have held that a child who does not receive appropriate medical evaluations or care is neglected. See *In re Stephen K.*, 373 Ill. App. 3d 7, 20 (2007). Moreover, there is no statutory requirement or Illinois case law ruling that requires a finding of medical neglect to be supported by expert medical testimony. In determining whether a child is neglected, the State must prove the allegations of neglect by a preponderance of the evidence, meaning it must demonstrate that the allegations are more probable than not. *In re Edward T.*, 343 Ill. App. 3d 778, 794 (2003).

¶ 8       A determination of neglect is within the discretion of the trial court and will not be disturbed on review unless it is against the manifest weight of the evidence. *In re S.S.*, 313 Ill. App. 3d 121, 127 (2000). A trial court's finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *In re Arthur H.*, 212 Ill. 2d at 464.

¶ 9       In the instant case, the trial court's finding that Erin was medically neglected as a result of respondent's failure to have her undergo the recommended follow-up blood screening to determine if she had sickle cell disease or merely the trait was not against the manifest weight of the evidence where the finding was supported by Erin's medical records and the testimony of a veteran public health nurse and experienced caseworker.

¶ 10      Erin was born on December 5, 2009, at West Lake Hospital. Prior to the start of the adjudication hearings, Erin's certified medical records from West Lake Hospital were admitted into evidence, without objection, as People's Exhibit No. 1. The medical records indicated that on December 6, 2009, Erin screened positive for "POSSIBLE FSC SICKLE

HEMOGLOBIN C DISEASE ***." On July 6, 2010, Erin underwent additional blood work resulting in a diagnosis showing that "Hemoglobin electrophoresis is consistent with hgb S/C disease."

¶ 11    Ms. Jomarie Kilpatrick, a public health nurse employed with the Cook County department of public health (Department), testified that Erin came to the attention of the Department in February 2010, when it received the results of a newborn screening test indicating that Erin might possibly have sickle cell disease. At the time of the adjudicatory hearing, Kilpatrick had been employed with the Department for 11 years. Kilpatrick testified that Erin would have to be rescreened again after six months to determine if she actually had the disease.

¶ 12    Kilpatrick explained that an infant is born with maternal blood and that it takes approximately six months for the maternal blood to clear the baby's system and after that the baby starts making its own blood. Rescreening is done after the six-month period to determine if the child has sickle cell, and if so, what type. Rescreening also gives an indication as to the possible types of treatment.

¶ 13    Kilpatrick testified that her agency does not actually conduct the rescreening. The agency informs the parents of the results of the initial screening test and then directs them to take the child to a physician for rescreening. The agency follows up with the parents and the physician to determine if the rescreening was performed.

¶ 14    Kilpatrick described the possible health risks associated with failing to get follow-up care. She stated that the sickling of blood cells causes the cells to hook together and form clumps creating blockages and causing joints and organs to degenerate due to lack of oxygen. Decreased bodily functions can cause death.

¶ 15    Kilpatrick testified that the disease can be extremely painful. A mother whose baby is suffering from undiagnosed sickle cell may not know why the baby continues to cry.

¶ 16    Kilpatrick testified that she spoke to respondent by telephone on June 4, 2010, and explained to her the results of the initial screening of Erin and the need to take Erin to a physician for rescreening. Kilpatrick also explained to respondent the possible health risks to Erin associated with failing to have her undergo the rescreening.

¶ 17    Kilpatrick testified that respondent told her she would get Erin the follow-up care. Respondent, however, declined Kilpatrick's offer to help her locate a physician or to obtain health insurance for Erin because Aaron A. did not want respondent having anything to do with the State of Illinois because he did not want to go to court for child support.

¶ 18    Kilpatrick was unable to make any further contact with respondent after their June 4 telephone conversation. Kilpatrick testified that respondent never provided her with proof that Erin ever received the recommended rescreening.

¶ 19    Ms. Marla Courts, an investigator with the Illinois Department of Children and Family Services (DCFS), was assigned to Erin's case on June 3, 2010, based on allegations of medical neglect. Courts testified that after multiple attempts to contact respondent and Aaron A., she finally had a telephone conversation with Aaron A. on June 22, 2010. She explained to him the role of DCFS and told him that the agency needed to clarify Erin's medical status. Aaron A. denied that Erin had sickle cell.

-4-

¶ 20    Courts testified that during the course of her investigation she tried to learn if Erin was ever taken to the hospital to receive the recommended follow-up care. She never received any information regarding such care. On or about June 29, 2010, the trial court granted the agency temporary custody of Erin and issued a child protection warrant for her. Sometime in July 2010, Courts closed out Erin's case and assigned the case to another caseworker for additional investigation.

¶ 21    Ms. Linda Moore, a caseworker with DCFS, was assigned to Erin's case on July 8, 2010, due to allegations of medical neglect. Moore testified that after multiple attempts to contact respondent and Aaron A., she finally had a face-to-face meeting with Aaron A. on July 30, 2010, at his residence in Maywood, Illinois.

¶ 22    Moore testified that she spoke to Aaron A. about sickle cell disease, Erin's health, and the outstanding child protection warrant for Erin. Aaron A. responded that he had taken Erin to the hospital and that doctors had told him that she only had sickle cell trait. He also showed Moore hospital records indicating that Erin had undergone hemoglobin testing.

¶ 23    Moore testified that Aaron A. refused her requests to see Erin and stated that if anyone tried to take his baby away, he would "shoot up the entire Maywood area." Aaron A. then stated that Erin was with her paternal grandmother in Bolingbrook.

¶ 24    On cross-examination by respondent's attorney, Moore testified that Aaron A. had provided her with paperwork showing that Erin had undergone a hemoglobin test on July 6, 2010, to determine if the baby had serum converted from the mother's blood to the baby's blood. Respondent had been instructed to take Erin to Loyola Hospital for genetic testing.

¶ 25    Moore testified that on September 7, 2010, she followed up with Erin's pediatrician and learned that the testing done on July 6, 2010, revealed that Erin had sickle cell. The testing had been done around the time Erin was six months old. Moore explained that when a baby is suspected of having sickle cell disease, the baby should undergo incremental blood tests to determine what percentage of blood is converting from maternal blood to the baby's own blood.

¶ 26    The baby can be tested at three months of age so that blood conversion percentages can be documented. Moore testified that if the blood tests indicated that Erin had sickle cell, then she could have been put on medication starting at three to four months of age. Moore testified that her understanding of sickle cell disease was not just based on this case, but that she had managed a number of cases dealing with the disease and had communicated with a number of professionals in the field.

¶ 27    On November 18, 2010, Courts was reassigned to an investigation involving not only Erin, but her siblings Alicia and Alexander. Courts was investigating allegations of substantial risk of harm and environment injurious to the health and welfare of the children. Courts subsequently received information that the family had scheduled an appointment for December 6, 2010, at a Women, Infants and Children office (WIC) in Maywood, Illinois.

¶ 28    On that date, Courts, Moore, and a squad of police went to the WIC office. Aaron A. was arrested on a fugitive warrant and taken into custody. The children were taken into protective custody. Moore testified that this was the first time she had seen Erin.

¶ 29    At the WIC office with respondent present, Courts spoke to Alexander about Aaron A.

-5-

Alexander told Courts that Aaron A. had a gun which he had pointed at respondent's head, but that he did not hit her. Alexander also told Courts that Aaron A. and respondent argued and fussed a lot.

¶ 30    In light of Erin's medical records and the testimonies of Kilpatrick, Courts, and Moore, we find that the trial court's adjudicatory finding that Erin was medically neglected as a result of respondent's failure to have her undergo recommended follow-up periodic blood screening to determine if she had sickle cell disease or merely the trait was supported by the manifest weight of the evidence. See, *e.g.*, *In re Stephen K.*, 373 Ill. App. 3d at 20-21 (finding of medical neglect of child diagnosed with cystic fibrosis upheld where parents consistently missed medical appointments, failed to comply with treatment suggestions, and neglected to utilize recommended programs); *In re N.*, 309 Ill. App. 3d 996, 1006-09 (1999) (finding of medical neglect of premature infant upheld where parents continually missed follow-up appointments with medical specialists who were recommended to ensure that the infant was developing properly).

¶ 31    Finally, we hold that the trial court's adjudicatory finding that Erin's younger sister, Alicia, was neglected as a result of an injurious environment was supported by the manifest weight of the evidence. Section 2-3(1)(b) of the Act provides that a neglected minor includes "any minor under 18 years of age whose environment is injurious to his or her welfare." 705 ILCS 405/2-3(1)(b) (West 2010).

¶ 32    The term "injurious environment" has been recognized "as an amorphous concept that cannot be defined with particularity." *In re Arthur H.*, 212 Ill. 2d at 463. The term has generally been interpreted to include " 'the breach of a parent's duty to ensure a "safe and nurturing shelter" for his or her children.' " *In re Arthur H.*, 212 Ill. 2d at 463 (quoting *In re N.B.*, 191 Ill. 2d 338, 346 (2000)).

¶ 33    In the instant case, the trial court's finding that Alicia was neglected as a result of an injurious environment was premised in part on the doctrine of anticipatory neglect in that the trial court determined that Alicia was in an injurious environment based on the finding that her sibling Erin had been found to have been neglected. The trial court's finding was also based on the court's determination that Aaron A. had made threatening remarks to a caseworker stating he would shoot up the neighborhood if anyone tried to take away his children.

¶ 34    The doctrine of anticipatory neglect recognizes that a parent's treatment of one child is probative of how that parent may treat his or her other children. *In re T.S-P.*, 362 Ill. App. 3d 243, 248-49 (2005). "Under the anticipatory neglect theory, the State seeks to protect not only children who are direct victims of neglect or abuse, but also those who have a probability to be subject to neglect or abuse because they reside, or in the future may reside, with an individual who has been found to have neglected or abused another child." *In re Arthur H.*, 212 Ill. 2d at 468. The doctrine of anticipatory neglect is codified in section 2-18(3) of the Act, which states in relevant part that "proof of the abuse, neglect or dependency of one minor shall be admissible evidence on the issues of the abuse, neglect or dependency of any other minor for whom the respondent is responsible." 705 ILCS 405/2-18(3) (West 2010).

¶ 35　　Evidence that the parents had neglected to provide adequate medical care for Erin was admissible as evidence concerning an injurious environment for Alicia. In considering this evidence, the trial court took into account the circumstances surrounding the neglect of Erin, but also evidence that the couple fought frequently and that Aaron A. had made threatening remarks that he would shoot up the neighborhood if anyone tried to take away his children. Viewing the evidence presented at the adjudicatory hearing in its totality, we find that the trial court's finding that Alicia was neglected as a result of an injurious environment was not against the manifest weight of the evidence.

¶ 36　　Accordingly, we affirm the adjudicatory orders of the trial court finding Erin medically neglected and Alicia neglected as a result of an injurious environment.

¶ 37　　Affirmed.