NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241601-U

NO. 4-24-1601

IN THE APPELLATE COURT

FILED
May 14, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* R.W., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Mercer County |
| Petitioner-Appellee, | ) | No. 24JA3 |
| v. | ) | |
| Patricia K., | ) | Honorable |
| Respondent-Appellant). | ) | Matthew W. Durbin, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court.
Justices Zenoff and Vancil concurred in the judgment.

**ORDER**

¶ 1     *Held*: (1) Under the doctrine of invited error, the appellate court declined to address respondent's argument that the trial court erred in finding the minor neglected; (2) respondent forfeited her argument that the court violated her procedural due process rights by conducting the dispositional hearing without her being present in court; (3) respondent forfeited her argument that the court erred in finding her unable to care for the minor; and (4) respondent failed to establish she was denied her right to the effective assistance of counsel.

¶ 2     Respondent, Patricia K., appeals from the trial court's judgment in a juvenile neglect case finding her minor child, R.W. (born in November 2022), neglected, adjudicating him a ward of the court, finding her unable to care for him, and placing him in the custody and guardianship of the Illinois Department of Children and Family Services (DCFS). On appeal, respondent argues (1) the court erred in finding the minor neglected, (2) the court violated her procedural due process rights by conducting the dispositional hearing without her either

physically or virtually present in court, (3) the court erred in finding her unable to care for the minor, and (4) she was deprived of her right to the effective assistance of counsel. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          On September 17, 2024, the State filed a petition for adjudication of wardship with respect to R.W., alleging he was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(b) (West 2022)) because his environment was injurious to his welfare. Specifically, the State alleged "that the minor has remained in a home where sexual abuse allegations were made without any additional protections or precautions taken." The State attached to its petition a "Formal Request for State's Attorney to File a Petition for Juvenile Court Intervention." The attached document set forth the factual basis underpinning the allegation of neglect. According to the document, Greg W., who is R.W.'s father, was accused by I.J., the 14-year-old daughter of Greg. W's paramour, of digitally penetrating her vagina. I.J. was subsequently interviewed at the Mercer County Children's Advocacy Center, and she reported that Greg W. had sexually assaulted her on four or five separate occasions. DCFS found I.J.'s accusations to be credible. Greg W. was also interviewed, and he denied the accusations and confirmed that no protective measures had been taken to ensure I.J.'s safety. DCFS concluded that Greg W.'s "explanations did not fit the timeline and he often provided nonsensical excuses, so his denial was not deemed to be credible." The attachment to the petition concluded by noting that Greg W. was also being investigated for allegedly sexually abusing two other minors.

¶ 5          The trial court conducted a temporary custody hearing the same day the State filed its neglect petition. At the hearing, the State noted that respondent was living in Arkansas, and it had concerns about returning the minor to her on a temporary basis because it had not been

"able to see her home environment and assess it to make sure that's, you know, safe and appropriate for a one-year-old." Respondent stipulated to DCFS being granted temporary custody of the minor, and the court accepted respondent's stipulation.

¶ 6 At a status hearing on September 23, 2024, the trial court asked the State if it had determined whether temporary placement of R.W. with respondent was appropriate. The State informed the court that it did not believe temporary placement with respondent was appropriate because "Arkansas will not go out and assess the mother's home without a formal child protective request" and respondent's roommates had not been vetted by DCFS.

¶ 7 On October 17, 2024, respondent filed a motion requesting the trial court allow her to appear virtually at all future hearings. The court granted respondent's motion.

¶ 8 On November 12, 2024, the trial court conducted an adjudicatory hearing. At the hearing, counsel for Greg W. informed the court that his client would agree to stipulate to the allegation of neglect "and then we should just set this for a dispositional hearing 30 days down the road." In response, counsel for respondent stated, "I agree with that entirely." The court ultimately accepted Greg W.'s stipulation and entered an adjudicatory order finding R.W. neglected on the basis he "was allowed to remain in an injurious environment pursuant to stipulation of father."

¶ 9 On December 10, 2024, the trial court conducted a dispositional hearing. At the outset of the dispositional hearing, respondent's counsel and the court had the following exchange:

> "MR. MILJUSH [(COUNSEL FOR RESPONDENT)]: [Respondent] had
> called my office and didn't get a Zoom link, and so I just was trying to figure

- 3 -

out—anyways, she's trying to access by Zoom, but I don't know how much time you want to—

THE COURT: We're not doing that today.

MR. MILJUSH: Okay.

THE COURT: That has to be requested ahead of time, approved by the Court, and then set up by the clerk. There's just no way to get it done today so— and not for lack of trying to accommodate. It's logistically impossible to get it done during the time frame that we have here today, and you are here representing her, so that's fine."

After the above exchange, the State informed the court that it had filed a dispositional report in advance of the hearing and asked the court to "adopt and to order the recommended items *** as stated in the dispositional report." According to the dispositional report, respondent was "residing with 2 roommates in a 3-bedroom trailer in Arkansas." At the hearing, the State argued that respondent was unable to care for the minor because she was "back and forth from out of state" and there were "serious concerns from DCFS, which I believe, were filed with the Court previously as well during the temporary custody hearing." The court ultimately found respondent unable to care for R.W. because "[s]he has no housing. She's bouncing back and forth to Arkansas." Following the hearing, the court entered a dispositional order finding respondent unable to care for R.W. "due to housing concerns, living in Arkansas, and no stable living either there or in Mercer County."

¶ 10        This appeal followed.

¶ 11                                II. ANALYSIS

¶ 12        On appeal, respondent argues (1) the trial court erred in finding the minor

- 4 -

neglected, (2) the court violated her procedural due process rights by conducting the dispositional hearing without her being physically or virtually present in court, (3) the court erred in finding her unable to care for the minor, and (4) she received ineffective assistance of counsel.

¶ 13 The purpose of the Act is to secure for each minor subject to it "such care and guidance, preferably in the minor's own home, as will serve the safety and moral, emotional, mental, and physical welfare of the minor and the best interests of the community." 705 ILCS 405/1-2(1) (West 2022). In furtherance of its stated purpose, the Act establishes the procedures that must be followed before a minor may be removed from the custody of his parents and made a ward of the court. *In re Arthur H.*, 212 Ill. 2d 441, 462 (2004). The process begins with the State filing a petition for wardship and the trial court conducting a temporary custody hearing to determine whether there is probable cause to believe the minor is abused, neglected, or dependent. 705 ILCS 405/2-10(2) (West 2022). If the court finds probable cause to believe the minor is abused, neglected, or dependent, the minor is placed in temporary custody and the process advances to the adjudicatory hearing. *In re Z.L.*, 2021 IL 126931, ¶ 60.

¶ 14 "At the adjudicatory hearing, the court shall first consider only the question whether the minor is abused, neglected or dependent." 705 ILCS 405/2-18(1) (West 2022). A neglected minor includes any minor "whose environment is injurious to the minor's welfare." *Id.* § 2-3(1)(b). Our supreme court has defined "neglect" as the "failure to exercise the care that circumstances justly demand." (Internal quotation marks omitted.) *In re N.B.*, 191 Ill. 2d 338, 346 (2000); see *People ex rel. Wallace v. Labrenz*, 411 Ill. 618, 624 (1952) ("[Neglect] embraces wilful as well as unintentional disregard of duty. It is not a term of fixed and measured meaning. It takes its content always from specific circumstances, and its meaning varies as the context of surrounding circumstances changes."). "An 'injurious environment' is an amorphous concept

which cannot be defined with particularity; therefore, each case should be reviewed considering the specific circumstances of that case." *In re M.K.*, 271 Ill. App. 3d 820, 826 (1995). "[O]ur courts have interpreted 'injurious environment' to include the breach of a parent's duty to ensure a 'safe and nurturing shelter' for his or her children." *N.B.*, 191 Ill. 2d at 346. "The State has the burden to prove allegations of abuse or neglect by a preponderance of the evidence." *Z.L.*, 2021 IL 126931, ¶ 61. "We will not disturb the trial court's finding of abuse or neglect unless it is against the manifest weight of the evidence. [Citation.] A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *Id.*

¶ 15        First, respondent argues the trial court erred in finding R.W. neglected because there was no factual basis for Greg W.'s stipulation. Alternatively, respondent contends the neglect finding was erroneous because "even the allegations in the petition, if proved, would not themselves support the allegation that there was an injurious environment present." Respondent acknowledges that she forfeited her argument by failing to raise it in the court below but nonetheless asks this court to either overlook the forfeiture to obtain a just result or review her claim for plain error.

¶ 16        We find that respondent did not merely forfeit her neglect argument but rather invited the error that she now complains of for the first time on appeal. "Under the doctrine of invited error, [a party] may not request to proceed in one manner and then later contend on appeal that the course of action was in error." *People v. Carter*, 208 Ill. 2d 309, 319 (2003). "Invited error differs from mere forfeiture. A [party] might not merely forgo objecting to an alleged error but actively invite or acquiesce in it." *People v. Holloway*, 2019 IL App (2d) 170551, ¶ 44. "Thus, invited error does not raise a mere forfeiture to which the plain-error exception might apply; it creates an estoppel that precludes plain-error analysis." *Id.*; see *People*

*v. Ramirez*, 2013 IL App (4th) 121153, ¶ 79 ("[I]nvited errors are not subject to plain-error review."); *In re Stephen K.*, 373 Ill. App. 3d 7, 25 (2007) ("A party is estopped from taking a position on appeal that is inconsistent with a position the party took in the trial court."). Here, at the adjudicatory hearing, Greg W.'s attorney informed the court and the parties that Greg W. wished to stipulate to the allegation of neglect and then proceed to a dispositional hearing. In response, respondent's attorney stated, "I agree with that entirely." Thus, because respondent expressly agreed to proceed by way of Greg W. stipulating to the allegations of neglect at the adjudicatory hearing, she is estopped from now challenging the trial court's neglect finding on appeal. See, *e.g.*, *Stephen K.*, 373 Ill. App. 3d at 25. Accordingly, we decline to review this claim for plain error. See *Ramirez*, 2013 IL App (4th) 121153, ¶ 79 ("[I]nvited errors are not subject to plain-error review.").

¶ 17        Next, respondent argues the trial court violated her procedural due process rights by conducting the dispositional hearing without her being physically or virtually present in court. Respondent acknowledges that she forfeited this argument by failing to raise it in the court below but nonetheless asks this court to review it for plain error.

¶ 18        We agree that respondent forfeited her argument by failing to raise it in the trial court and we will therefore review it for plain error. See, *e.g.*, *Fawcett v. Reinertsen*, 131 Ill. 2d 380, 386 (1989) ("Issues not raised in the trial court, including constitutional matters, are generally considered [forfeited] on appeal."). Our supreme court has described the plain-error doctrine as follows:

> "[T]he plain error-doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant,

regardless of the seriousness of the error, or (2) a clear or obvious error occurs

and that error is so serious that it affected the fairness of the defendant's trial and

challenged the integrity of the judicial process, regardless of the closeness of the

evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

Although the doctrine is generally invoked in the criminal setting, because parents have a

fundamental liberty interest in raising their children, it has also been applied to proceedings

under the Act. See, *e.g.*, *In re Andrea D.*, 342 Ill. App. 3d 233, 242 (2003). "Under both prongs

of the plain-error doctrine, the [respondent] has the burden of persuasion. [Citations.] If the

[respondent] fails to meet his burden, the procedural default will be honored." *People v. Hillier*,

237 Ill. 2d 539, 545 (2010).

¶ 19        "A parent has a fundamental liberty interest, protected by the due process clause

of the fourteenth amendment [(U.S. Const., amend. XIV)], in maintaining a parental relationship

with his or her child." *In re P.S.*, 2021 IL App (5th) 210027, ¶ 52. To ensure this fundamental

liberty interest is protected, the Act provides that parents have "the right to be present, to be

heard, to present evidence material to the proceedings, [and] to cross-examine witnesses." 705

ILCS 405/1-5(1) (West 2022). However, "the right to be present, in-person or otherwise, is not

absolute." *In re Es. C.*, 2021 IL App (1st) 210197, ¶ 18. "In determining whether the procedures

followed in a parental rights termination proceeding satisfied the constitutional requirements of

due process, this court must balance three factors." *In re M.R.*, 316 Ill. App. 3d 399, 402 (2000).

Specifically, we must consider the following:

"(1) the private interest affected by the official action; (2) the risk of an erroneous

deprivation of that interest through the procedures used, and the probable value, if

any, of additional or substitute procedural safeguards; and (3) the government's

interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

¶ 20 Here, in October 2024, respondent filed a motion "to appear for all hearings via ZOOM" because she lived in Arkansas. The trial court granted respondent's motion. The record shows that respondent appeared at the November 2024 adjudicatory hearing by Zoom. At the conclusion of the hearing, the court informed the parties that the dispositional hearing would be conducted on December 10, 2024. Counsel for respondent requested that respondent be permitted to appear at the dispositional hearing by Zoom, and the court granted the request. At the outset of the dispositional hearing, respondent's counsel and the court had the following exchange:

"MR. MILJUSH: [Respondent] had called my office and didn't get a Zoom link, and so I just was trying to figure out—anyways, she's trying to access by Zoom, but I don't know how much time you want to—

THE COURT: We're not doing that today.

MR. MILJUSH: Okay.

THE COURT: That has to be requested ahead of time, approved by the Court, and then set up by the clerk. There's just no way to get it done today so— and not for lack of trying to accommodate. It's logistically impossible to get it done during the time frame that we have here today, and you are here representing her, so that's fine."

¶ 21 After addressing whether a clear error occurred, respondent sets forth the balance of her plain-error argument as follows: "It was *** closely balanced given the paucity of evidence, and challenged the integrity of due process since the mother's fundamental liberty

interest in acting as a parent [citation] was interfered with without proper evidence." As noted above, respondent has the burden of persuasion under both prongs of the plain-error doctrine. *Hillier*, 237 Ill. 2d at 545. In other words, respondent must persuade us both that a clear error occurred and that *either* the evidence was closely balanced *or* that the error was so serious it affected the fairness of the proceeding and challenged the integrity of the judicial process. Respondent does not come close to meeting her burden as to the latter half of the plain-error analysis. Instead, she sets forth a single sentence, without any reference to the relevant facts, in an attempt to satisfy her burden. See, *e.g.*, *People v. Polk*, 2014 IL App (1st) 122017, ¶ 48 (stating that a party "must argue that plain error occurred, and that argument must also be sufficiently developed or it is also forfeited"). Accordingly, we will honor respondent's forfeiture of this claim.

¶ 22        Next, respondent argues the trial court erred in finding her unable to care for the minor. She contends that "there was no evidence (at least, not properly before the court) of any of what the court found." Respondent again acknowledges that she forfeited this argument but asks this court to review it for plain error.

¶ 23        Once the trial court has determined that a minor is abused or neglected, the court then moves to the next step of the procedure set forth in the Act, which is the dispositional hearing. *Z.L.*, 2021 IL 126931, ¶ 60 (citing 705 ILCS 405/2-21(2) (West 2018)). "At the dispositional hearing, the trial court determines whether it is consistent with the health, safety, and best interests of the minor and the public that the minor be made a ward of the court." *Id.* "Prior to committing a minor to the custody of a third party, such as DCFS, a trial court must first determine whether the parent is unfit, unable, or unwilling to care for the child." *In re M.M.*, 2016 IL 119932, ¶ 21 (citing 705 ILCS 405/2-27(1) (West 2012)). At the dispositional hearing,

"[a]ll evidence helpful in determining these questions, including oral and written reports, may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the adjudicatory hearing." 705 ILCS 405/2-22(1) (West 2022); see *In re M.D.*, 2022 IL App (4th) 210288, ¶ 63 ("Essentially, there are no rules of evidence governing what the court may receive and consider at the dispositional hearing."). "At the dispositional phase, the State bears the burden of proving unfitness by a preponderance of the evidence. [Citation.] We will not reverse a trial court's finding of unfitness, unless it is against the manifest weight of the evidence." *In re K.E.S.*, 2018 IL App (2d) 170907, ¶ 51. "A decision is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent." *Id.*

¶ 24    Here, we cannot say the trial court committed a clear or obvious error in finding respondent unable to care for R.W. At the dispositional hearing, the State noted that it had filed a dispositional report. According to the report, respondent was "residing with 2 roommates in a 3-bedroom trailer in Arkansas." The State argued that respondent should be found unable to care for R.W. because she "is back and forth from out of state" and there were "serious concerns from DCFS, which, I believe, were filed with the Court previously." We note that at a status hearing on September 23, 2024, the State informed the court that "Arkansas will not go out and assess the mother's home without a formal child protective request" and respondent's roommates had not been vetted by DCFS. The court ultimately found respondent unable to care for the minor and provided the following reasoning in open court: "She has no housing. She's bouncing back and forth to Arkansas. She's unable to care for this child at this time." The court also entered a written dispositional order finding respondent unable "due to housing concerns, living in Arkansas, and no stable living either there or in Mercer County." Thus, because there was some evidence in the record to support the court's finding, we cannot say the court committed clear or

obvious error in finding respondent unable to care for the minor, and we honor respondent's

forfeiture of this argument.

¶ 25        Next, respondent argues that counsel was ineffective for allowing the three

complained-of errors discussed above to occur.

¶ 26        Although party respondents to a proceeding under the Act do not have a

constitutional right to counsel, they do have a statutory right to counsel. See 705 ILCS 405/1-

5(1) (West 2022); see also *In re Br. M.*, 2021 IL 125969, ¶ 42 ("Though the statutory right to

counsel in proceedings under the *** Act lacks constitutional footing [citation], that right is

closely linked to its constitutional counterpart."). "Claims of ineffective assistance of counsel in

parental rights proceedings are assessed using the test set forth in *Strickland v. Washington*, 466

U.S. 668 (1984)." *Es. C.*, 2021 IL App (1st) 210197, ¶ 15. "Under [*Strickland*], a defendant must

show substandard performance by defense counsel and resulting prejudice." *Br. M.*, 2021 IL

125969, ¶ 43. "*Strickland* requires a defendant to affirmatively prove that prejudice resulted from

counsel's errors." (Internal quotation marks omitted.) *People v. Johnson*, 2021 IL 126291, ¶ 55;

see *People v. Palmer*, 162 Ill. 2d 465, 481 (1994) (noting that proof of prejudice cannot be based

on "mere conjecture or speculation"). In reviewing ineffectiveness claims, "this court employs a

bifurcated standard of review, deferring to the trial court's findings of fact unless they are against

the manifest weight of the evidence and considering *de novo* the ultimate legal issue of whether

counsel's omission supports an ineffective assistance claim." *People v. Cunningham*, 2012 IL

App (3d) 100013, ¶ 31.

¶ 27        Respondent first argues that counsel was ineffective for failing to contest

Greg W.'s stipulation to the allegation of neglect because there was no factual basis provided for

the stipulation and because the allegations were insufficient to support a finding of neglect based on a theory of anticipatory neglect.

¶ 28        Section 2-21(1) of the Act provides that if a court finds a minor to be neglected, "the court shall then determine and put in writing the factual basis supporting that determination." 705 ILCS 405/2-21(1) (West 2022). In *In re R.B.*, 336 Ill. App. 3d 606, 618 (2003), this court noted "that a respondent parent's stipulation of facts can provide a sufficient basis by itself for a trial court's finding of neglect." (citing *In re April C.*, 326 Ill. App. 3d 225, 242-43 (2001)). In *In re C.J.*, 2011 IL App (4th) 110476, ¶ 31, we noted that "a parental admission together with facts of record demonstrating the factual basis for the initial removal, is sufficient to protect the parent's due process rights at [the adjudicatory] stage of the proceedings." (Emphasis omitted and internal quotation marks omitted.) Moreover, the Second District, in *In re A.L.*, 2012 IL App (2d) 110992, ¶ 24, held that "so long as the respondent's stipulation did not violate her right to due process, and the trial court specified that it found the minors neglected pursuant to respondent's stipulation to count I of the amended petitions, the trial court had a sufficient factual basis to accept that stipulation." The *A.L.* court provided the following reasoning in support of its holding that it was unnecessary to reverse where the trial court's adjudicatory order did not include a factual basis for the respondent's stipulation: "To reverse now—when the record unequivocally demonstrates that the parties and the trial court were aware of the factual basis for the State's petition, and thus for respondent's stipulation— merely because the court did not specifically recite that factual basis would contravene the underlying purpose of the Act." *Id.* ¶ 29.

¶ 29        Here, there were enough facts of record demonstrating a sufficient factual basis to accept Greg W.'s stipulation. The State attached to its neglect petition a "Formal Request for

State's Attorney to File a Petition for Juvenile Court Intervention," which set forth a detailed factual basis for the allegations of neglect. In its written adjudicatory order, the trial court specifically indicated that it found R.W. neglected because he "was allowed to remain in an injurious environment pursuant to stipulation of father." Thus, pursuant to *R.B.*, *C.J.*, and *A.L.*, we reject respondent's argument that there was no factual basis for Greg W.'s stipulation. Accordingly, we reject his ineffectiveness claim because he is unable to establish prejudice. See *People v. Sanchez*, 169 Ill. 2d 472, 487 (1996) ("Because a defendant must establish both a deficiency in counsel's performance and prejudice resulting from the alleged deficiency, failure to establish either proposition will be fatal to the claim.").

¶ 30        We likewise reject respondent's argument that the allegations in the State's petition, "that the minor has remained in a home where sexual abuse allegations were made without additional protections or precautions taken," were insufficient to support a finding of neglect based on a theory of anticipatory neglect.

¶ 31        "The theory of anticipatory neglect flows from the concept of an 'injurious environment' which is set forth in the Act." *Arthur H.*, 212 Ill. 2d at 468. The aim is

> "to protect not only children who are the direct victims of neglect or abuse, but also those who have a probability to be subject to neglect or abuse because they reside, or in the future may reside, with an individual who has been found to have neglected or abused another child." *Id.*

"The doctrine of anticipatory neglect recognizes that a parent's treatment of one child is probative of how that parent may treat his or her other children." *In re Erin A.*, 2012 IL App (1st) 120050, ¶ 34. "[W]hen faced with evidence of prior neglect by parents, the juvenile court should

not be forced to refrain from taking action until each particular child suffers an injury." (Internal quotation marks omitted.) *Arthur H.*, 212 Ill. 2d at 477.

¶ 32        Here, we cannot say the trial court's neglect finding based on a theory of anticipatory neglect was against the manifest weight of the evidence. The State presented evidence that Greg W., who was R.W.'s custodial parent, had been credibly accused of sexually assaulting his paramour's 14-year-old daughter on at least four separate occasions. Greg W. was also being investigated for sexually assaulting two other minors. Moreover, Greg W. denied the allegations against him, his paramour admitted that she did not believe her daughter, and both acknowledged that they had not put any protective measures in place to protect I.J. or R.W. Thus, not only was there credible evidence that Greg W. had sexually assaulted a minor in his care, but there was also evidence that both he and his paramour were discounting I.J.'s accusations and preventing her from getting the help she needed, which represented both a failure to exercise the care demanded by the circumstances (*N.B.*, 191 Ill. 2d at 346) and a breach of the duty to ensure a safe and nurturing shelter (*id.*). See *Stephen K.*, 373 Ill. App. 3d at 20 ("Illinois courts have held that a child who does not receive appropriate medical evaluations or care is neglected."); *In re Kamesha J.*, 364 Ill. App. 3d 785, 794-95 (2006) (affirming the anticipatory neglect finding where the minor's sibling had been abused and neglected, the individuals responsible had not addressed the abuse and neglect, and the minor was likely to reside with the individuals responsible). This was probative evidence that R.W. was at a substantial risk of being neglected due to an injurious environment. Accordingly, because we cannot say the trial court's neglect finding based on anticipatory neglect was against the manifest weight of the evidence, we find respondent is unable to establish prejudice, and we reject her ineffectiveness claim. See *Sanchez*, 169 Ill. 2d at 487.

¶ 33 Respondent also argues that counsel was ineffective for failing "to properly prepare a videoconference link or properly respond to the court's ruling" with respect to the request for a continuance at the dispositional hearing. We note that with respect to prejudice, respondent merely asserts that but for counsel's alleged error, "she would have otherwise been able to present evidence to rebut the court's improper findings and the court would not have found [respondent] unable to parent her child." However, respondent has failed to specifically identify any evidence she could have presented to rebut the State's evidence, and we find she has forfeited her argument as a result. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Additionally, respondent's single conclusory sentence in support of her prejudice contention falls far short of "affirmatively proving" she was prejudiced. See *Johnson*, 2021 IL 126291, ¶ 55 ("*Strickland* requires a defendant to affirmatively prove that prejudice resulted from counsel's errors." (Internal quotation marks omitted.)); see also *Palmer*, 162 Ill. 2d at 481 (noting that proof of prejudice cannot be based on "mere conjecture or speculation").

¶ 34 Finally, respondent argues that counsel was ineffective for failing to argue at the dispositional hearing that the State presented insufficient evidence to prove her unable to care for the minor. According to respondent, "this caused [her] prejudice because with proper argument, the court would not have found her unable to serve as an effective parent." However, we have already concluded that there was sufficient evidence in the record to support the trial court's finding that respondent was unable to effectively parent R.W. We therefore reject respondent's argument. See *Sanchez*, 169 Ill. 2d at 487.

¶ 35                                III. CONCLUSION

¶ 36 For the reasons stated, we affirm the trial court's judgment.

¶ 37 Affirmed.