NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230476-U

NO. 4-23-0476

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 12, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Pike County |
| WILLIAM POOR, | ) | No. 17CF198 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John Frank McCartney, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Zenoff and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court granted the Office of the State Appellate Defender's motion to withdraw as counsel and affirmed the trial court's judgment summarily dismissing defendant's postconviction petition.

¶ 2    Defendant, William Poor, appealed the trial court's judgment summarily dismissing his postconviction petition, and the Office of the State Appellate Defender (OSAD) was appointed to represent him. Now, on appeal, OSAD has filed a motion to withdraw as counsel on the basis it can raise no colorable argument the court erred in summarily dismissing defendant's petition. We grant OSAD's motion and affirm the court's judgment.

¶ 3                          I. BACKGROUND

¶ 4    In December 2017 and March 2018, the State charged defendant with criminal trespass to real property (720 ILCS 5/21-3(a)(2) (West 2016)) and felony domestic battery

(*id.* § 12-3.2(a)(2)), among other charges. With respect to the former charge, the State alleged that defendant "knowingly and without lawful authority, entered upon the land of the Dogwood Apartments *** after receiving notice prior to the entry that entry is forbidden."

¶ 5        On March 20, 2018, defendant pleaded guilty to felony domestic battery in exchange for the State's agreement to dismiss the remaining charges. As a factual basis for the plea, the State indicated it could call John Pennock, an officer with the Pike County Sheriff's Office, and the victim, Jessica Key, if the case were to proceed to trial. Pennock would testify that he was dispatched to Key's apartment—a unit within the Dogwood Apartments complex—on December 26, 2017, in response to a report of a "commotion" coming from Key's apartment. Upon entering Key's apartment, Pennock was informed by Key that defendant had pushed her and then left. The State further indicated that Key would testify defendant pushed her to the floor and that she was in a dating relationship with defendant and shared three children with him.

¶ 6        Defendant was initially sentenced to two years' imprisonment but, when the State did not object to his motion to reconsider the sentence, the trial court resentenced him to 30 months' probation. In July 2020, the court granted the State's petition to revoke defendant's probation and, in August 2020, resentenced him to 30 months' imprisonment, followed by a 4-year term of mandatory supervised release.

¶ 7        On March 7, 2023, defendant *pro se* filed a petition for postconviction relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)), alleging plea counsel was ineffective for failing to inform him of statements given by Pennock and Key that demonstrated his fourth amendment rights (see U.S. Const., amend. IV) were violated where Pennock had neither probable cause nor permission to enter Key's apartment. Specifically, defendant alleged:

"At the resentencing hearing, the State, Although wrongfully done, introduced in the [presentence investigation report], the Probable Cause Affidavit written by the arresting officer, Captain John Pennock ***, along with the voluntary statement written by Jessica Key. Although the introduction of this evidence was wrongful, inproper and weighted prejudical [*sic*] value, the Petitioner had never seen either of these statements, nor the discovery due to the ineffectiveness of [plea counsel]."

Defendant attached to his petition (1) Officer Pennock's probable cause affidavit and incident report, (2) Key's voluntary statement provided on the day of the offense, and (3) a written statement by Key dated October 20, 2021.

¶ 8        According to Officer Pennock's probable cause affidavit, he was dispatched to Dogwood Apartments after a tenant in the building reported hearing a "loud commotion" coming from Key's unit and "a female and a male voice being very loud coming from the same [unit]." Pennock knocked on Key's front door several times before she opened it. As she was opening the door, Pennock "observed, it appeared that she had been crying and was holding her left side. I asked her what happened at this time [but] she wouldn't say much and kept on looking down the hallway towards a back bedroom." Pennock entered the apartment, walked towards the back bedroom, and noticed an exit door slightly ajar. He then spoke with Key, who informed him that defendant "was in the apartment and had come to the door and looked through the peephole. When [defendant] saw it was a Police Officer he exited the apartment in a hurry. When he was leaving [Key] told him he was not supposed to be at her apartment." Pennock subsequently spoke with the apartment building's caretaker, Sheila Slight, who told him that the owner of

- 3 -

Dogwood Apartments "had paper work filled out informing [defendant] to stay off the property of Dogwood Apartments," and the paperwork had been given to defendant by police officers.

¶ 9        Key indicated in her voluntary statement that was provided on the day in question that she had asked defendant to pick up milk for her and to use his phone to activate her new phone. Defendant went to Key's apartment as requested, and, while she was using his phone, she saw "messages from girls and it upset [her] so [she] told him to leave. As he was going, he 'changed his' [mind] and proceeded [to] hit [Key]" "and said he was not leaving." Defendant and Key heard the officer knock on the door three times. Defendant "looked out the peep hole and seen [*sic*] the cop and ran out the back."

¶ 10       Key provided the following additional detail in her October 2021 statement:

"In my original statement, I did not address my encounter with the first officer that knocked on the door. I do feel it is important to know that upon answering the door to the first officer, I did not give any verbal permission for the officer to enter. That is all I will say about my original statement."

¶ 11       Defendant alleged that the documents summarized above demonstrated that he was invited to Key's apartment, which "clearly gave him the right of privacy and right to be free from unwarranted searches and seizures" under the fourth amendment. Defendant further alleged that, "In addition to the invitation to the apartment, [he] was and still is in a dating relationship with Jessica Key, has children in common, had property there at the time, *i.e.*[,] clothing, hyguine [*sic*], food, etc. and frequently stayed there." Thus, according to defendant, because Pennock did not have probable cause to enter the apartment and Key stated she never gave him permission to enter, "If [plea counsel] *** would have challenged the probable cause, then it

- 4 -

would have changed the total outcome of the case, yet [plea counsel] did not challenge anything but instead hid and consealed [*sic*] police reports and failed to interview witnesses and also failed to investigate."

¶ 12       On May 23, 2023, the trial court entered a written order summarily dismissing defendant's postconviction petition.

¶ 13       Defendant timely appealed the trial court's judgment, and OSAD was appointed to represent him on appeal. OSAD now moves to withdraw as appellate counsel on the basis it can raise no colorable argument defendant's petition should have been advanced to the second stage of postconviction proceedings. We granted defendant leave to file a response to OSAD's motion, but he failed to do so.

¶ 14                          II. ANALYSIS

¶ 15       On appeal, OSAD contends it can raise no colorable argument that defendant's postconviction petition should have been advanced to the second stage of proceedings. Specifically, OSAD maintains no argument can be made that (1) the trial court failed to comply with the procedural requirements of the Act or (2) defendant's ineffective-assistance claim had arguable merit such that it should have been advanced to the second stage of postconviction proceedings. We review the summary dismissal of a postconviction petition *de novo*. *People v. Edwards*, 197 Ill. 2d 239, 247 (2001).

¶ 16       The Act provides a method for criminal defendants to "assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. Hodges*, 234 Ill. 2d 1, 9 (2009) (citing 725 ILCS 5/122-1 *et seq.* (West 2006)). A defendant initiates postconviction proceedings by filing a petition that must, among other things, "clearly set forth the respects in which [the]

petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2022). At the first stage of proceedings, "the trial court independently determines, without input from the State and [w]ithin 90 days after the filing and docketing of the petition, whether the petition is frivolous or is patently without merit." (Internal quotation marks omitted.) *People v. Anderson*, 2015 IL App (2d) 140444, ¶ 11; see *People v. Swamynathan*, 236 Ill. 2d 103, 113 (2010) ("The 90-day time requirement is mandatory and a trial court's noncompliance with the time requirement renders a summary dismissal order void."). A postconviction petition "may be summarily dismissed as 'frivolous or *** patently without merit' pursuant to section 122-2.1(a)(2) only if the petition has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 16. A petition lacks an arguable legal basis if it is based on "an indisputably meritless legal theory," such as a legal theory "which is completely contradicted by the record." *Id.*

¶ 17         "At the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Id.* at 17; see *Strickland v. Washington*, 466 U.S. 668 (1984) (articulating the two-pronged standard for claims of ineffective assistance of counsel). Challenges to guilty pleas alleging ineffective assistance of counsel are likewise subject to the *Strickland* standard. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). "Counsel's conduct is deficient under *Strickland* if the attorney failed to ensure that the defendant entered the plea voluntarily and intelligently." *People v. Rissley*, 206 Ill. 2d 403, 457 (2003). To establish prejudice, "the defendant must show there is a reasonable probability that, absent counsel's errors, the defendant would have pleaded not guilty and insisted on going to trial." *People v. Hall*, 217 Ill. 2d 324, 335 (2005). "A bare allegation that the defendant would have pleaded not guilty *** is not enough to

establish prejudice. [Citation.] Rather, the defendant's claim must be accompanied by either a claim of actual innocence or the articulation of a plausible defense that could have been raised at trial." *Id.* at 335-36.

¶ 18    First, although OSAD has provided the incorrect dates regarding when defendant's petition was filed and when it was summarily dismissed, we nonetheless agree that no argument can be made the trial court failed to comply with the first-stage procedural requirements of the Act. As noted above, at the first stage of proceedings, "the trial court independently determines, without input from the State and [w]ithin 90 days after the filing and docketing of the petition, whether the petition is frivolous or is patently without merit." (Internal quotation marks omitted.) *Anderson*, 2015 IL App (2d) 140444, ¶ 11. Here, defendant filed his petition on March 7, 2023, and the court entered its summary dismissal order less than 90 days later, on May 23, 2023. Moreover, nothing in the record indicates that the court received any input from the State in dismissing the petition. Thus, no argument can be made that the court failed to comply with the relevant procedural requirements of the Act in summarily dismissing defendant's petition.

¶ 19    Second, we agree with OSAD that no argument can be made defendant's ineffective-assistance claim should have been advanced to the second stage of postconviction proceedings. OSAD contends defendant's claim that plea counsel was ineffective for failing to file a motion to suppress the evidence recovered after Pennock entered Key's apartment without probable cause or permission lacks arguable merit "because [defendant's] claim attempts to invoke his fourth amendment rights in a place in which he did not have a reasonable expectation of privacy."

¶ 20    Both the fourth amendment to the United States Constitution and article I, section 6, of the Illinois Constitution protect against unreasonable searches and seizures. See U.S. Const., amend. IV (protecting the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures"); Ill. Const. 1970, art. I, § 6 (providing that the "people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches [and] seizures"). "Warrantless searches are generally considered unreasonable unless they fall within a few specific exceptions." *People v. Pitman*, 211 Ill. 2d 502, 513 (2004). "[T]he Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 351 (1967). "But the extent to which the Fourth Amendment protects people may depend upon where those people are." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). "Accordingly, to claim the protection of the fourth amendment, a defendant must demonstrate that he or she personally has an expectation of privacy in the place searched and that his or her expectation is reasonable \*\*\*." *Pitman*, 211 Ill. 2d at 514. Our supreme court has stated that the following factors should be considered when determining whether a defendant possessed a reasonable expectation of privacy in the place searched:

> "(1) ownership of the property searched; (2) whether the defendant was legitimately present in the area searched; (3) whether defendant has a possessory interest in the area or property seized; (4) prior use of the area searched or property seized; (5) the ability to control or exclude others from the use of the property; and (6) whether the defendant himself had a subjective expectation of privacy in the property." *Id.* at 520-21.

¶ 21    Here, no argument can be made defendant had a reasonable expectation of privacy in Key's apartment. Defendant made no allegation in his petition that he had any sort of

ownership or possessory interest in Key's apartment or that he had the ability to control or exclude others from the property. In fact, the exact opposite is true given defendant, according to the statements of Pennock and Key, was prohibited from entering the premises. Defendant never alleged that the statements by Pennock and Key that he was prohibited from entering the apartment complex or that he was told to leave Key's apartment were false. Taking as true the allegations in defendant's petition, no argument can be made that he had a reasonable expectation of privacy in Key's apartment such that Pennock entering the apartment without a warrant violated his fourth amendment rights. Thus, any argument that plea counsel would have been successful in moving to suppress the evidence on fourth amendment grounds is patently without merit because it is based on an indisputably meritless legal theory. Accordingly, because defendant cannot arguably demonstrate prejudice, his ineffective-assistance claim cannot survive summary dismissal. See, *e.g.*, *People v. Sanchez*, 169 Ill. 2d 472, 487 (1996) ("Because a defendant must establish both a deficiency in counsel's performance and prejudice resulting from the alleged deficiency, failure to establish either proposition will be fatal to the claim.").

¶ 22        Lastly, we agree with OSAD that defendant's claim plea counsel was ineffective for failing to investigate and interview witnesses likewise lacks arguable merit. OSAD contends the claim is nothing more than "a broad conclusory allegation that is not cognizable under the Act."

¶ 23        Section 122-2 of the Act provides that "[t]he petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2022). "Generally, the failure to either attach the necessary affidavits, records, or other evidence or explain their absence is fatal to a post-conviction petition [citation] and by itself justifies the petition's summary dismissal." (Internal

quotation marks omitted.) *People v. Matthews*, 2022 IL App (4th) 210752, ¶ 63. Here, defendant did not identify a single witness that plea counsel should have interviewed, let alone attach an affidavit from a potential witness. This failure alone justified summary dismissal. See *id.* Moreover, defendant's allegation that plea counsel was ineffective because she "failed to interview witnesses and also failed to investigate" is "nothing more than a broad conclusory allegation of ineffective assistance of counsel," and "[s]uch allegations are not allowed under the Act." *People v. Delton*, 227 Ill. 2d 247, 258 (2008). Accordingly, we agree with OSAD that defendant's claim of ineffective assistance of plea counsel lacks arguable merit.

¶ 24                                   III. CONCLUSION

¶ 25        For the reasons stated, we grant OSAD's motion to withdraw and affirm the trial court's judgment.

¶ 26        Affirmed.